Lionell **MAULL**, Plaintiff,

v.

**DIVISION OF STATE POLICE, DEPARTMENT OF PUBLIC SAFETY, STATE OF DELAWARE, Colonel Alan D. Ellingsworth, Superintendent, Delaware State Police, in both his official and personal capacities, and Lieutenant Colonel Gerald R. Pepper, Jr., Deputy Superintendent, Delaware State Police, in both his official and personal capacities, Defendants.**

No. CIV.A.99–179–JJF.

United States District Court, D. Delaware.

May 3, 2001.

John X. Denney and William O'Day of Tomar, O'Brien, Kaplan, Jacoby & Graziano, Wilmington, DE. Of Counsel: Richard M. Schall, Patricia A. Barasch and Robert J. Cox of Schall & Barasch, LLC, Moorestown, NJ, for Plaintiff.

W. Michael Tupman, Deputy Attorney General, Delaware Department of Justice, Dover, DE, for Defendants.

### OPINION

FARNAN, District Judge.

Pending before the Court is a Motion for Summary Judgment (D.I.54) filed by Defendants, the Division of State Police, the Department of Public Safety, the State of Delaware, Colonel Alan D. Ellingsworth, and Lieutenant Colonel Gerald R. Pepper, Jr. For the reasons set forth below, the Court will grant Defendants' Motion.

### BACKGROUND

**I. Procedural Background**

The instant action arises as a result of Plaintiff's termination from his employment as a Delaware State Trooper. By his Complaint, Plaintiff alleges that Defendants violated his rights under 42 U.S.C. § 1983, the Equal Protection Clause of the Fourteenth Amendment, and the Rehabilitation Act by discriminating against him on the basis of race and disability.

By Memorandum Opinion and Order dated June 18, 1999, the Court dismissed Plaintiff's Section 1983 claims against the State Defendants, except for Plaintiff's claim of prospective injunctive relief against Defendants Ellingsworth and Pepper in their official capacities. In addition, the Court dismissed Plaintiff's claims against the individual Defendants under the Rehabilitation Act.

Thereafter, Plaintiff amended his Complaint to add claims under Title VII of the Civil Rights Act, and the Americans with Disabilities Act ("ADA"). The parties have completed discovery, and Defendants filed the instant Motion For Summary Judgement.

**II. Factual Background**

Plaintiff Lionel Maull is an African–American male who was hired in 1986 by the Division of State Police[1] ("Delaware State Police") as a Recruit Trooper. From the time of his hire until September 1998, Plaintiff was primarily assigned to Troop 5 in Bridgeville, Delaware and Troop 7 in Lewes, Delaware. (D.I. 17 at ¶ 3, 8, 10). During his tenure as a State Trooper, Plaintiff received several awards for outstanding job performance, was nominated numerous times for various other awards and honors, and consistently received outstanding reviews from his supervisors. (D.I.66, Exh. 15). However, Plaintiff also accumulated a lengthy disciplinary record for various incidents, many of them involving or resulting from Plaintiff's consumption of alcohol.

For example, on September 16, 1987, Plaintiff was officially reprimanded by the State Police for exercising poor judgment as a result of a citizen's complaint that he

---

1. The Delaware State Police is an agency of the Delaware Department of Public Safety.

drew his revolver during an incident with her dogs. (D.I.56, Exh. E–1). Less than one year later, on May 25, 1988, Plaintiff was involved in an off-duty automobile accident. (D.I. 56, Exh. B at ¶ 16). An investigation of the incident revealed that Plaintiff had a blood alcohol content of .07% at the time of the accident, and Plaintiff admitted to the investigator that he had been drinking earlier in the day. (D.I. 56, Exh. B at ¶ 16). As a result of the accident, Plaintiff pled guilty to careless driving in the Justice of the Peace Court; however, the Delaware State Police did not discipline Plaintiff for this incident. (D.I. 56, Exh. B at ¶ 16).

While on duty that same year, Plaintiff disregarded a red light causing a collision that resulted in damage to Plaintiff's assigned police vehicle and two civilian vehicles. (D.I.56, Exh. E–2). As a result of this incident, the Delaware State Police suspended Plaintiff for a period of eight hours. (D.I.56, Exh. E–2).

On two occasions in October and November 1988, and again in February 1989, Plaintiff failed to appear as a witness for trials in the Justice of the Peace Court. Because of Plaintiff's absences, the court dismissed the charges against the defendants. (D.I. 56, Exh. E–3 to E–5). The Delaware State Police disciplined Plaintiff for these incidents with an official reprimand for the first offense and separate eight hour suspensions for the second and third offenses. (D.I. 56, Exh. E–3 to E–5).

On October 26, 1989, Plaintiff arrived 90 minutes late for a preliminary hearing in the Court of Common Pleas. As a result of this incident, the Delaware State Police suspended Plaintiff for a period of 24 hours. (D.I.56, Exh. E–6).

Shortly thereafter, on November 28, 1989, Plaintiff was involved in another off-duty automobile accident. (D.I.56, Exh. B–2). Again, the Delaware State Police

investigated the accident, and a blood alcohol test administered to Plaintiff several hours after the accident indicated that Plaintiff had a blood alcohol content of .08%. (D.I.56, Exh. B–2). Plaintiff's supervisor directed the investigating officer to drive Plaintiff home and ordered Plaintiff not to operate any motor vehicles for the remainder of that evening. However, Plaintiff violated his supervisor's order, and as a result, the Delaware State Police suspended Plaintiff for 16 hours. (D.I.56, Exh. E–7).

Less than one year later, the Delaware State Police received several reports from citizens that Plaintiff was buying and using crack cocaine. To investigate these reports, the Delaware State Police placed Plaintiff under surveillance on September 13, 1990. *Maull v. Warren,* 1992 WL 114111, at \*1 (Del.Super.Ct. April 24, 1992). During the surveillance, the police followed Plaintiff to "five known drug distribution areas in Sussex County." *Id.* The police confronted Plaintiff, and Plaintiff refused to allow the police to conduct a search of his home because "there were things at his residence that the police would take the wrong way." *Id.* The police eventually obtained a search warrant for Plaintiff's house and car and found three hypodermic needles and syringes, and anabolic steroids. *Id.* Plaintiff was charged with conduct unbecoming an officer for violating the controlled substance act, possession of drug paraphernalia, and possession of a controlled substance. Represented by counsel, Plaintiff waived his right to a hearing before the Division Trial Board, and went directly to the Superintendent for the penalty phase. Plaintiff pled guilty to the charge of conduct unbecoming an officer, and the Superintendent suspended Plaintiff for ten days and placed him on probation for one year. (D.I. 56, Exh. E–12 and E–13). In addition, the

Superintendent directed Plaintiff to undergo an evaluation for possible alcohol dependency. Plaintiff appealed the Superintendent's decision to the Secretary of the Department of Public Safety and the Superior Court. Both the Secretary and the Superior Court affirmed the Superintendent's decision. However, Plaintiff never underwent an evaluation for his alcohol dependency.

Approximately two months later, on January 28, 1991, a citizen filed a complaint against Plaintiff because the citizen allegedly smelled alcohol on Plaintiff's breath during a traffic stop. (D.I.56, Exh. E–8). After an investigation of this complaint, the Delaware State Police dismissed the allegation as "unfounded." (D.I.56, Exh. E–9).

On April 24, 1994, Plaintiff was involved in an on-duty accident when he struck a telephone booth with his patrol car. (D.I.56, Exh. E–10). The Delaware State Police suspended Plaintiff for eight hours for inattentive driving.

In September 1997, the Delaware State Police suspended Plaintiff for 24 hours for conduct unbecoming an officer as a result of an incident in which Plaintiff "created a disturbance" by participating in a "verbal confrontation" with two citizens at the Midway Slots and Simulcast in Harrington, Delaware. (D.I.56, Exh. E–11).

On December 6, 1997, Plaintiff was involved in a fifth automobile accident. Plaintiff disregarded a stop sign and struck a parked car causing damage to both vehicles. (D.I.56, Exh. E–14). Investigating this incident, the Delaware State Police found that Plaintiff was driving without a valid drivers license and without registration or insurance. (D.I.56, Exh. E–14). Specifically, Plaintiff's drivers license and registration had expired over six months prior to this incident. (D.I. 56, Exh. D at ¶ 4).

Plaintiff was again charged with conduct unbecoming an officer. Plaintiff did not contest the charge, and at a hearing on February 19, 1998, Plaintiff admitted to the charges. The Superintendent suspended Plaintiff for six months because his drivers license would be suspended by the Department of Motor Vehicles ("DMV") for six months pursuant to 21 *Del. C.* § 2118(s) for failure to carry insurance.[2] (D.I. 56, Exh. D at ¶ 5–7). In addition, the Superintendent demoted Plaintiff one rank, from Corporal to Trooper First Class, transferred Plaintiff to Troop 3, and placed Plaintiff on probation for one year effective upon expiration of his suspension. (D.I. 56, Exh. A at ¶ 7).

As a result of this incident, Plaintiff also pled no contest to failing to stop and driving without insurance in the Justice of the Peace Court. The court fined Plaintiff $1,800.00, but suspended $1,300 of the fine. For the remaining $500.00 due, the court imposed a payment schedule of $50.00 per month. (D.I. 56, Exh. D at ¶ 5). However, Plaintiff failed to make his first payment on the fine, and the Justice of the Peace Court issued a bench warrant for Plaintiff's arrest. (D.I.56, Exh. A–11).

During his suspension, the Delaware State Police accommodated Plaintiff's growing financial difficulties[3] by allowing

---

**2.** This formal six month suspension was reduced to three months in June of 1998, but Plaintiff did not return to work until six months had elapsed because he still could not legally operate a motor vehicle until he regained his drivers license. (D.I. 56, Exh. A at ¶ 23, 26).

**3.** Plaintiff and his ex-wife owed over $30,000 in loans and Plaintiff was required by court order to make child support payments. (D.I. 56, Exh. A at ¶ 8; Exh. E at 54–55).

Plaintiff to be employed at a second job and by allowing him to work one day per pay cycle so that Plaintiff could maintain his employment benefits. (D.I. 56, Exh. A at ¶ 8, 11). The Delaware State Police also paid for Plaintiff to have five counseling sessions in the Spring of 1998 with a certified financial planner. (D.I. 56, Exh. C at ¶ 8). After the Division of Motor Vehicles reinstated Plaintiff's drivers license, Plaintiff returned to work on a full time basis on September 9, 1998. (D.I. 56 at ¶ 28).

Approximately one month later, on the night of October 10, 1998, Plaintiff began drinking heavily. Plaintiff's drinking continued into the early morning hours of the next day. (D.I. 56, Exh. E at 74). Plaintiff was scheduled to report to work at 7:00 a.m. on October 11, 1998, but he called in sick because he knew he "might have some alcohol in [his] system." (D.I. 56, Exh. E at 75–76). However, Plaintiff continued to drink throughout the day of October 11 and into the early morning hours of October 12, 1998. (D.I. 56, Exh. E at 78–79). On October 12, Plaintiff was again scheduled to report for work at 7:00 a.m.; however Plaintiff called in to take a second sick day. (D.I. 56, Exh. E at 79–80). Plaintiff then drove to Salisbury, Maryland to pick up a friend. Plaintiff and his friend drove to Harrington and spent the day gambling. Plaintiff later returned home to watch television and resume his drinking until approximately 11:00 p.m. or 12:00 a.m. (D.I. 56, Exh. E at 81–83).

On October 13, 1998, Plaintiff returned to work. (D.I. 56, Exh. E at 84–87). On his way to work, Plaintiff issued a speeding ticket to a driver traveling 65 miles per hour in a 50 mile per hour zone. (D.I. 56, Exh. E at 86). Plaintiff also gave a student walking along the side of the road a ride to school. (D.I. 56, Exh. E at 87). When Plaintiff arrived for work, Corporal Harlan Blades, who was working behind the reception desk, smelled alcohol on Plaintiff's breath and reported his concern to Lieutenant Joseph E. Huttie. (D.I. 56, Exh. F at 49–50). Lieutenant Huttie spoke with Plaintiff about the possibility that Plaintiff had been drinking alcohol, but Plaintiff denied drinking. Corporal Blades administered a breath test to Plaintiff, which indicated the presence of alcohol. (D.I. 56, Exh. F at 51–52). According to Defendants, Lieutenant Huttie then obtained authorization to administer an intoxilyzer test in accordance with the State Police Alcohol and Substance Abuse Policy. The results of Plaintiff's intoxilyzer test indicated that Plaintiff had a blood alcohol content of .07%. (D.I. 56, Exh. F at 74). Lieutenant Huttie immediately suspended Plaintiff for the remainder of the day. (D.I.56, Exh. E–30).

After this incident, Plaintiff contacted the State Police Personnel Director for help with his alcoholism. Plaintiff entered a residential treatment program on December 28, 1998. (D.I. 56, Exh. E at 138–39; D.I. 56, Exh. C at ¶ 14). The State Police notified Plaintiff's superiors to be flexible in setting Plaintiff's work schedule to accommodate Plaintiff's treatment. The State Police also permitted Plaintiff to use accumulated sick leave for his treatment. Plaintiff returned to work on January 30, 1999.

In March 1999, the Division Trial Board held a hearing on charges brought by the State Police against Plaintiff in connection with his October 1998 drinking episode. Specifically, the State Police charged Plaintiff with one count of violating the State Police's Alcohol and Substance Abuse Policy, two counts of violating Delaware State Police Rule No. 26, which prohibits an officer from feigning illness or abusing sick leave, and one count of violating Delaware State Police Rule No. 12 for failing to exercise sound judgment in the

performance of his duties. (D.I.56, Exh. E–33). The Trial Board heard the evidence on each charge and made the following recommendations for each charge:

1) For the violation of the DSP substance abuse policy, "20 days without pay and placed in an on demand B Group [for on-demand testing];"

2) For each of the counts of abuse of sick time, 20 hours without pay; and

3) For the . . . violation of "failing to exercise sound judgment," the penalty of "Dismissal."

(D.I.56, Exh. A–19).

Following the hearing, then Superintendent Colonel Alan D. Ellingsworth ("Colonel Ellingsworth") reviewed Plaintiff's case and his entire disciplinary record. The Superintendent recommended to the Secretary of the Department of Public Safety ("the Secretary") that Plaintiff be terminated for the following reasons: (1) his conduct on October 11–13, 1998, (2) his probationary status, and (3) his prior disciplinary record. (D.I.56, Exh. A–21). After an administrative hearing, the Secretary agreed with Colonel Ellingsworth's recommendation and officially terminated Plaintiff on September 9, 1999. (D.I.56, Exh. A–23). Prior to his termination and while the Secretary was still considering the issue, Plaintiff filed the instant action. With this background in mind, the Court will turn to the merits of Defendants' Motion.

## DISCUSSION

### I. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In determining whether there is a triable dispute of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976). However, a court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). Thus, to properly consider all of the evidence without making credibility determinations or weighing the evidence the "court should give credence to the evidence favoring the [non-movant] as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Id.*

To defeat a motion for summary judgment, Rule 56(c) requires the non-moving party to:

do more than simply show that there is some metaphysical doubt as to the material facts. . . . In the language of the Rule, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is "no genuine issue for trial."

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Accordingly, a mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## II. Plaintiff's Discrimination Claims

### A. *The McDonnell Douglas Framework*

Discrimination claims under Title VII and the ADA are analyzed under the framework set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this burden-shifting framework, the plaintiff must first establish a prima facie case of discrimination. *Reeves*, 120 S.Ct. at 2106. Once a prima facie case is established, the burden of production shifts to the defendant to produce a legitimate nondiscriminatory reason for the adverse employment action taken against the plaintiff. *Id.* Because the burden of persuasion does not shift at this stage, the employer's legitimate nondiscriminatory reason is not evaluated insofar as its credibility is concerned. *Id.* Once a legitimate nondiscriminatory reason is proffered, the presumption of discrimination created by the prima facie case "drops away." *Id.* At this point, the plaintiff must proffer sufficient evidence for the factfinder to conclude by a preponderance of the evidence that the legitimate nondiscriminatory reasons offered by the employer were not true, but were a pretext for unlawful discrimination. Although the prima facie case and the inferences drawn therefrom may still be considered at the pretext stage, this evidence must be combined with sufficient evidence to permit the trier of fact to conclude that the employer intentionally discriminated against the plaintiff. *Id.* To this effect, it is not enough for the factfinder to disbelieve the defendant's legitimate nondiscriminatory reason. Rather, even if the factfinder finds the defendant's reason unpersuasive or contrived, there must still be sufficient evidence for the factfinder to believe the plaintiff's explanation for the adverse action, i.e. that the defendant intentionally discriminated against the plaintiff. *Id.* at 2108–2109.

### B. *Whether The Eleventh Amendment Bars Plaintiff's Claims Under The Rehabilitation Act and the ADA*

By their Motion, Defendants contend that the Eleventh Amendment bars Plaintiff's claims against the State Defendants under the Rehabilitation Act and the ADA. Defendants also contend that Plaintiff cannot maintain his action against the individual Defendants in their individual capacities under the ADA.

In *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001), the United States Supreme Court recently resolved the disagreement among the Circuit Courts as to whether the Eleventh Amendment bars suits for money damages brought by an individual against a state under the ADA. Examining whether Congress acted within its constitutional authority by abrogating Eleventh Amendment immunity under the ADA, the Supreme Court concluded in a 5–4 decision that "[t]he legislative record of the ADA ... simply fails to show that Congress did in fact identify a pattern of irrational state discrimination in employment against the disabled." *Id.* at 964. Because Congress exceeded its authority in abrogating the States' Eleventh Amendment immunity under the ADA, the Supreme Court concluded that individual lawsuits for money damages against a state for failure to comply with the ADA are barred by the Eleventh Amendment. *Id.* at 967–968.

In light of the Supreme Court's decision in *Garrett*, the Court concludes that Plaintiff's claims for money damages against the State Defendants under the ADA are barred by the Eleventh Amendment.

However, because the Supreme Court declined to address whether its holding applied to claims under the Rehabilitation Act and the case relied on by Defendants for the proposition that Section 504 of the Rehabilitation Act does not abrogate the States' Eleventh Amendment immunity was overturned on rehearing en banc, the Court declines to apply *Garrett* to Plaintiff's claim under the Rehabilitation Act.

■ As for Defendants' argument that Plaintiff cannot maintain his claims against the individual Defendants in their individual capacities under the ADA, the Court agrees with Defendants. While the Court of Appeals for the Third Circuit has not yet addressed the issue of individual liability under the ADA, the Third Circuit has concluded in the context of Title VII, that Congress did not intend to hold individual employees liable. *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir.1996) (en banc), *cert. denied*, 521 U.S. 1129, 117 S.Ct. 2532, 138 L.Ed.2d 1031 (1997). Numerous courts have applied the Title VII analogy to the ADA and have concluded that the ADA does not provide a cause of action against individual employees. *See Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir.1996); *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1279–1282 (7th Cir.1995); *Douris v. Brobst*, 2000 WL 199358 (E.D.Pa. Feb. 14, 2000) (collecting cases). In accord with the weight of authority on this issue and applying the Third Circuit's rationale in the context of Title VII to the ADA, the Court concludes that, like Title VII, the ADA does not provide for a cause of action against individual employees. Accordingly, the Court will grant Defendants' Motion For Summary Judgment insofar as it pertains to Plaintiff's claims under the ADA against the individual Defendants.

■ As Defendants recognize in their Opening Brief, even with the application of Eleventh Amendment immunity to the State Defendants under the ADA and the inability to maintain an action against the individual Defendants in their individual capacities under the ADA, Plaintiff may still maintain a disability claim for prospective injunctive relief against Defendant Pepper in his official capacity as current Superintendent. (D.I. 55 at 18). Accordingly, the Court will proceed to the merits of Plaintiff's disability and racial discrimination claims.

C. *Whether Defendants Are Entitled To Summary Judgment On Plaintiff's Disability Claims Under the ADA and the Rehabilitation Act*

1. Whether Plaintiff Has Established A Prima Facie Case

■ To establish a prima facie case of discrimination under the ADA and the Rehabilitation Act,[4] a plaintiff must establish that (1) he or she has a "disability," (2) he or she is an otherwise "qualified" individual, (3) he or she suffered an "adverse employment action," and (4) he or she suffered the adverse employment action "because of that disability." *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 142 (3d Cir.1998).

By their Motion, Defendants contend that Plaintiff has not established the elements of the prima facie case, and therefore summary judgment is appropriate. Specifically, Defendants contend that (1) Plaintiff's alcoholism is not a disability within the meaning of the ADA; (2) Plaintiff is not otherwise qualified for employment as a State Trooper, because he poses a threat to the health or safety of others in

---

4. Courts generally apply the same standards to ADA and Rehabilitation Act claims. *O.F. v.* *Chester Upland Sch. Dist.*, 2000 WL 424276, at *3 n. 3 (E.D.Pa. April 19, 2000).

the workplace; and (3) Plaintiff was not terminated because of his alcoholism, but because of his misconduct. The Court will examine each of Defendants' arguments in turn.

### a. Whether Plaintiff is disabled

■ Under the ADA, an actionable disability is defined in part as a "physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(2)(A). Although some courts have suggested that alcoholism is *per se* a disability; *see Miners v. Cargill Communications, Inc.*, 113 F.3d 820, 823 n. 5 (8th Cir.1997); *Office of Senate Sergeant at Arms v. Office of Senate Fair Employment Practices*, 95 F.3d 1102, 1105 (Fed.Cir.1996), other courts have required the plaintiff to establish that his or her alcoholism substantially limits one or more major life activities. *See Burch v. Coca–Cola Co.*, 119 F.3d 305, 317 (5th Cir.1997) ("[T]he EEOC has not attempted to classify alcoholism as a per se disability, and we decline to adopt such a questionable position."); *Testerman v. Chrysler Corp.*, 1998 WL 71827, at *5 (D.Del. Feb. 11, 1998) (assuming, without specifically concluding, that plaintiff must proffer evidence that his or her alcoholism substantially limits major life activity before he or she can be considered "disabled"); *Hinnershitz v. Ortep of Pa., Inc.*, 1998 WL 962096, *4 (E.D.Pa. Dec. 22, 1998) (recognizing that alcoholism is not per se disability, but acknowledging that alcoholism can rise to level of disability if it substantially limits major life activity). Although the Third Circuit has not squarely addressed whether alcoholism is a per se disability, the Third Circuit's approach to the question of disability in other cases leads the Court to believe that the Third Circuit would require the Plaintiff, in accordance with the express language of the ADA, to establish that his alcoholism substantially limits a major life activity. *See e.g., Kelly v. Drexel Univ.*, 94 F.3d 102, 105–06 (3d Cir.1996) (refusing to conclude that a plaintiff is disabled due to an impairment that causes him to limp when walking absent a specific showing that his injury "substantially limits his ability to walk").

■ In this case, Plaintiff contends that he is disabled because he suffers from alcoholism. Plaintiff contends that the reports of his doctors establish that he suffers from the "disease of alcoholism" and "alcohol dependence." (D.I. 66 at 60, Exh. 20). However, the Court concludes that Plaintiff has not demonstrated that his alcoholism substantially limits a major life activity. As Defendants point out, Plaintiff has maintained that "at no time throughout his entire 13–year career with the [State Police] ... did his alcoholism affect the performance of his job duties." (D.I. 66 at 4). Even with regard to Plaintiff's October 12, 1998 drinking episode, Plaintiff maintains that his drinking did not affect him because he "awoke [on the morning of October 13], and did not feel hung-over from his previous night's drinking." (D.I. 66 at 6). However, even if Plaintiff suffered from the "effects of alcoholism-induced inebriation," Plaintiff has not established that his alcoholism substantially affected any of his major life activities. As the Court of Appeals for the Fifth Circuit recognized in *Burch*, the temporary impairments caused by the periodic, and even frequent, overindulgence of alcohol are insufficient to establish a substantially limiting impairment. 119 F.3d at 316 & n. 9 ("Although Burch's alcoholism assuredly affected how he lived and worked, 'far more is required to trigger coverage under [the ADA.]' "). Because Plaintiff has not established that his alcoholism rises to the level of a disability within the meaning of the ADA, the Court

concludes that Plaintiff has failed to establish a prima facie case of disability discrimination.

### b. Whether Plaintiff is otherwise qualified

Even if Plaintiff can establish that his alcoholism rises to the level of a disability, Plaintiff must also establish that he is "otherwise qualified" to serve in the position of a Delaware State Trooper. Defendants contend that Plaintiff is not otherwise qualified to be a Delaware State Trooper, because he poses a threat to the health and/or safety of others. In response, Plaintiff contends that he is qualified, because he can perform his job with the reasonable accommodation of a leave of absence to successfully complete a residential treatment program for his alcoholism. To this effect, Plaintiff points out that he completed treatment at the Father Ashley treatment facility, was discharged with a good prognosis and his therapist "cleared plaintiff to return to work" with continuing treatment. (D.I. 66 at 61–62, D.I. 56, Exh. C at ¶ 14–17, D.I. 68, Exh. 21 & Exh. 22 at 000054).

In considering the concept of reasonable accommodation as it relates to alcoholism, the Equal Employment Opportunity Commission has recognized that: "The ADA may ... require consideration of reasonable accommodations for ... an alcoholic who remains a 'qualified individual with a disability.' For example, a modified work schedule, to permit the individual to attend an ongoing self-help program, might be a reasonable accommodation for such an employee." Bonnie P. Tucker & Bruce A. Goldstein, *Legal Rights of Persons With Disabilities: An Analysis of Federal Law* 22:28–22:29 (Vol.II, Supp. March 1996) (citations omitted). Accordingly, courts have held that refusing to allow an employee to enter an alcohol treatment center prior to termination is a failure to provide a reasonable accommodation. *Corbett v. National Prods. Co.*, 1995 WL 133614, at *3–4 (E.D.Pa. March 27, 1995); *see also Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 311 (3d Cir.1999) (noting that, prior to terminating disabled employee, employer must engage in "interactive process" with employee to determine if and how reasonable accommodation could enable employee to remain in his or her position) (citing 29 C.F.R. § 1630.2(o)(3)).

However, courts have also recognized a distinction when the employee is a law enforcement officer. The ADA permits employers to consider whether an individual poses a direct threat to the health or safety of others in the workplace when considering whether an employee is qualified, and in the case of police officers, ensuring public health and safety is the sine quo non of their job. *Brennan v. New York City Police Dep't*, 1997 WL 811543, *6 (S.D.N.Y. May 27, 1997), *aff'd*, 141 F.3d 1151 (2d Cir.1998). Further, the ADA does not require an employer to lower his job performance expectations in order to accommodate an employee with alcoholism. To this effect, "an employer may hold an alcoholic employee to the same job performance standards that the employer holds other employees, *even if unsatisfactory performance is related to alcoholism.*" *Id.* at *4, n. 8 (emphasis in original) (citing 42 U.S.C. § 12114(c)(4)).

In *Brennan*, the court expressly considered the accommodation of monitoring a police officer with alcoholism. Recognizing that police officers must be able to respond immediately to emergency situations, and further recognizing the hampering effects of alcohol use on an individual's ability to respond, the court concluded that the continuous monitoring of a police officer with alcoholism would not eliminate or render manageable the risk of public harm

created by an officer with alcoholism. *Id.* at *5. Accordingly, the court concluded that the plaintiff failed to establish that he was "otherwise qualified" to serve as a police officer. *Id.; see also Little v. Federal Bureau of Investigation,* 1 F.3d 255, 259 (4th Cir.1993) (holding that, under Rehabilitation Act, FBI agent with history of alcohol related misconduct while both on and off duty is not "otherwise qualified" to perform job).

■ After reviewing the record in this case, the Court concludes that Plaintiff has failed to establish that he is "otherwise qualified" for employment as a Delaware State Trooper. Given the length and nature of Plaintiff's disciplinary record, which includes a number of incidents involving alcohol consumption, the possession of drug paraphernalia, several traffic related offenses, and several episodes of misconduct while Plaintiff was on probation, the Court concludes that Plaintiff's continued employment as a State Trooper would pose a considerable threat to the health and safety of the public and his fellow troopers, such that Plaintiff is not qualified for employment as a State Trooper. *See also Copeland v. Philadelphia Police Dep't,* 840 F.2d 1139, 1149 (3d Cir. 1988) (holding that under Rehabilitation Act, police department is not required to accommodate illegal conduct, like drug abuse). Accordingly, the Court concludes that Plaintiff has failed to establish a prima facie case of discrimination under the ADA and the Rehabilitation Act, and therefore, Defendants are entitled to summary judgment on Plaintiff's disability discrimination claims.

### c. Whether Plaintiff was terminated because of his disability

Even if Plaintiff could establish that he suffered from a disability and was otherwise qualified for employment as a State Trooper, Plaintiff is also required to show that he was terminated because of his disability. Defendants contend that Plaintiff was terminated because of his misconduct, and not because of his alcoholism. In response, Plaintiff contends that the circumstances of Plaintiff's termination demonstrate that Plaintiff was terminated because of his disability. Specifically, Plaintiff contends that the Superintendent knew that Plaintiff had completed a residential treatment program for alcoholism when he was terminated, and Defendants selectively enforced the sick leave policy against Plaintiff. (D.I. 66 at 62–65).

■ In the context of alcoholism and drug addiction, several courts, including the Third Circuit, have recognized a distinction between an adverse employment action due to "addiction-related misconduct" and an adverse employment action due to the disability of an addiction. For example, in *Salley v. Circuit City Stores, Inc.,* the Third Circuit recognized that under 42 U.S.C. § 12114(c), "an employer may hold an alcoholic or drug-dependent employee 'to the same qualification standards for employment or job performance and behavior that such entity holds other employees, even if any unsatisfactory performance or behavior is related to the drug use or alcoholism of such employee.'" 160 F.3d 977, 981 (3d Cir.1998). Thus, the Third Circuit concluded that "Section 12144(c) operates to allow employers to respond to addiction-related misconduct in a away that they cannot respond to other disability-related misconduct." *Id.; Brennan,* 1997 WL 811543, at *5 (collecting cases and recognizing that "courts have consistently found that termination in the context of misconduct that is tied or related to alcoholism does not violate the ADA"). To this effect, courts have repeatedly recognized that "while the ADA 'protects· an individual's status as an alcoholic, merely being an alcoholic does not insulate one from the consequences of one's actions.'" *Mararri v. WCI Steel,*

*Inc.*, 130 F.3d 1180, 1182–1183 (6th Cir. 1997) (citations omitted). Accordingly, both the ADA and the Rehabilitation Act permit an employer to terminate an employee for unsatisfactory conduct caused by alcoholism or illegal drug use. *Nielsen v. Moroni Feed Company*, 162 F.3d 604, 608–609 (10th Cir.1998) (collecting cases and holding that "unsatisfactory conduct caused by alcoholism and illegal drug use does not receive protection under the ADA or the Rehabilitation Act").

■ After reviewing the record in this case, the Court concludes that Plaintiff has not offered sufficient evidence from which a reasonable jury could conclude that Plaintiff's termination was based on his alcoholism, rather than his misconduct. Defendant Ellingsworth's knowledge that Plaintiff completed a residential treatment program for alcoholism is insufficient as a matter of law to show that Plaintiff was terminated because of his addiction. As the Third Circuit held in *Salley*, " 'the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate ... that the perception caused the adverse employment action.' " 160 F.3d at 981 (affirming summary judgment where employer fired plaintiff even though he successfully completed rehabilitation program) (citations omitted).

■ As for Plaintiff's argument that Defendants selectively enforced their sick leave policy against him, Plaintiff is correct that selective enforcement of an employer's policy can demonstrate unlawful discrimination. However, a plaintiff alleging discriminatory enforcement of a policy must show that the "employer treated [the plaintiff] differently from other employees not within the protected class who also engaged in the prohibited conduct." *Flynn v. Raytheon Co.*, 868 F.Supp. 383 (D.Mass.1994). In this case, Plaintiff has not offered any evidence that Defendants tolerated violations of the sick leave policy for individuals who called in sick for two consecutive days for the purposes of drinking and gambling. Thus, Plaintiff has failed to offer sufficient evidence to show that similarly situated employees were treated differently than Plaintiff. Given Plaintiff's lack of evidence that his termination was caused by his status as an alcoholic, the Court concludes that Plaintiff cannot establish that his termination was based on anything other than his misconduct.[5] *Brennan*, 1997 WL 811543, at *5 n. 11 (rejecting plaintiff's disparate treatment claim, because plaintiff could not show that other officers acted in comparable manner to plaintiff and were not disciplined). Accordingly, the Court will grant Defendants' Motion For Summary Judgment, because Plaintiff has failed to establish a prima facie case of disability discrimination.

2. Whether Sufficient Evidence Exists From Which A Jury Could Conclude That Defendants' Legitimate Non–Discriminatory Reason For Plaintiff's Termination Was Pretextual

■ Even if Plaintiff could establish a prima facie case of disability discrimina-

---

5. Based on the testimony of Corporal Blades, Plaintiff contends that the Delaware State Police have tolerated the use of sick leave from other employees who are not physically ill, and therefore, this is sufficient to show that the Delaware State Police applied the abuse of sick leave policy in a discriminatory manner against Plaintiff. However, as the court in *Brennan* made clear, Plaintiff must establish that the other individuals acted in a comparable manner to the Plaintiff. 1997 WL 811543, at *5 n. 11 (recognizing that reports offered by plaintiff to establish that other officers were not terminated for being unfit for duty were not comparable, because they did not include officers who engaged in the same type of misconduct as plaintiff, including alcohol use). Because Plaintiff has not offered any evidence with respect to similarly situated employees, he cannot demonstrate that Defendants applied their sick leave policy in a discriminatory manner.

tion, the Court concludes that Plaintiff has not offered sufficient evidence from which a jury could conclude that Defendants' reason for Plaintiff's termination was a pretext for disability discrimination. In this case, Defendants contend that they terminated Plaintiff for his misconduct, including his entire disciplinary record and his misconduct while on probation. As the Court has recognized, termination for alcohol or drug related misconduct is a legitimate non-discriminatory reason for terminating an employee. To show Defendants' proffered reason is a pretext for discrimination, Plaintiff must proffer sufficient evidence for the factfinder to conclude by a preponderance of the evidence that the legitimate nondiscriminatory reason offered by Defendants is not true. *Reeves*, 120 S.Ct. at 2106. As the Court explained in *Reeves*:

> The ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason ... is correct.' (citations omitted). In other words '[I]t is not enough ... to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination.' (citations omitted).

*Id.* at 2108.

After reviewing the evidence offered by Plaintiff, the Court concludes that Plaintiff has not offered sufficient evidence from which a reasonable factfinder could conclude that Defendants' reason for Plaintiff's termination was untrue and that Defendants intentionally discriminated against Plaintiff. As the Court discussed in the context of the prima facie case, Plaintiff's evidence of discrimination is insufficient as a matter of law. Plaintiff has not demonstrated that similarly situated

individuals were treated differently than him with regard to sick leave, and that Plaintiff was terminated after completing his rehabilitation program is insufficient to show that Defendants' reason for Plaintiff's termination was his addiction to alcohol, rather than his alcohol related misconduct. Plaintiff's record of misconduct is both lengthy and severe. Further, it is undisputed that until the disciplinary process was completed with regard to Plaintiff's misconduct during his probation period, Defendants allowed Plaintiff flexibility in his schedule so as to accommodate Plaintiff's request for individual and group counseling. In addition, Defendants allowed Plaintiff to use accumulated sick time to complete a residential treatment program. Because Plaintiff has not offered sufficient evidence from which a reasonable factfinder could conclude that Defendants' reason for Plaintiff's discharge was a pretext for intentional discrimination based upon his alcoholism, the Court concludes that Defendants are entitled to summary judgment on Plaintiff's disability discrimination claims under the ADA and the Rehabilitation Act.

D. *Whether Defendants Are Entitled To Summary Judgment On Plaintiff's Race Discrimination Claims Under Section 1983 And Title VII*

By their Motion, Defendants also contend that they are entitled to summary judgment on Plaintiff's race discrimination claims under § 1983 and Title VII, because Plaintiff has failed to proffer sufficient evidence to establish that Defendants terminated Plaintiff because of his race rather than his misconduct. (D.I. 55 at 24). In response, Plaintiff contends that he has presented sufficient evidence to allow the question of Defendants' motive and/or intent to be decided by a jury. (D.I. 66 at 26). The Court will examine each of the parties' arguments in turn.

### 1. Whether Plaintiff Has Established A Prima Facie Case

■ To establish a prima facie case of wrongful termination based on race discrimination under Title VII and § 1983, a plaintiff must establish that: (1) he or she is a member of a protected class; (2) he or she is qualified for the former position; (3) he or she suffered an adverse employment action; and (4) either non-members of the protected class were treated more favorably than the plaintiff, or the circumstances of the plaintiff's termination give rise to an inference of race discrimination.[6] *Goosby v. Johnson & Johnson Med., Inc.,* 228 F.3d 313, 318–19 (3d Cir.2000); *Pivirotto v. Innovative Sys., Inc.,* 191 F.3d 344, 356 (3d Cir.1999). Defendants have not challenged Plaintiff's proof regarding the first three elements of the prima facie case, and therefore, the Court will assume without deciding that Plaintiff has established these elements. With regard to the fourth element, however, Defendants contend that Plaintiff has not offered sufficient evidence to establish that Plaintiff was terminated under circumstances giving rise to an inference of discrimination. Specifically, Defendants contend that Plaintiff has not demonstrated that similarly situated individuals were treated differently than Plaintiff.

In response, Plaintiff contends that while he may rely on the disparate treatment of other non-protected employees to establish the fourth element of the prima facie case, he is not required to do so. Rather, Plaintiff contends that this inquiry is reserved for the pretext stage of the *McDonnell Douglas* analysis. Moreover, Plaintiff contends that he can establish the fourth element of the prima facie case, because in addition to treating non-protected workers more favorably than Plaintiff, Defendants also failed to adhere to their own policies in disciplining Plaintiff.

■ In discussing the requirement of a prima facie case under Title VII, the Third Circuit has recognized that the elements of a prima facie case may vary depending on the facts and circumstances in each case. *Bray v. L.D. Caulk Dentsply Int'l,* 2000 WL 1800527, *3 (D.Del. July 31, 2000) (citing *Pivirotto,* 191 F.3d at 352). While there does not appear to be a requirement that a plaintiff prove that similarly situated individuals were treated differently at the prima facie case stage of a race discrimination claim, the Third Circuit does require the plaintiff to show circumstances which give rise to an inference of discrimination. Circumstances which may give rise to an inference of discrimination include the more favorable treatment of individuals who are not in the plaintiff's protected class. *Bray,* 2000 WL 1800527, at *3 (discussing suspension case and requiring plaintiff to show that he was suspended " 'under circumstances that give rise to an inference of unlawful discrimination *such as might occur when a person not of the protected class is suspended'* ") (citations omitted) (emphasis added). Thus, it is not inappropriate for the Court to consider Plaintiff's evidence relating to comparators in the context of the prima facie case. Indeed, in referring to the fourth element of the prima facie case, Plaintiff specifically lists the treatment of other State Troopers as part of his evidence establishing an inference of discrimination. (D.I. 66 at 32–

---

6. The Court recognizes that a Section 1983 race discrimination claim has a more stringent "intent" requirement than a Title VII claim. However, the failure to meet the prima facie case under Title VII is fatal to a Section 1983 claim. *See Pennsylvania v.*

*Flaherty,* 983 F.2d 1267, 1273 (3d Cir.1993); *Williams v. Pennsylvania State Police–Bureau of Liquor Control Enforcement,* 108 F.Supp.2d 460, 471 (E.D.Pa.2000). Thus, the Court will analyze both Plaintiff's Section 1983 and Title VII claims together.

33 & n. 19). Accordingly, the Court will turn to the evidence offered by Plaintiff to determine if it is sufficient to establish that Plaintiff's termination occurred under circumstances giving rise to an inference of discrimination.

### a. Plaintiff's evidence relating to comparators

Plaintiff contends that Defendants disciplined Plaintiff more severely than white State Troopers who committed comparable or worse offenses than Plaintiff. In support of his contention, Plaintiff directs the Court to the records of several Troopers, whom Plaintiff contends were similarly situated to Plaintiff, yet treated more leniently than Plaintiff.

After reviewing the evidence as it relates to the "comparators" raised by Plaintiff, the Court concludes that the circumstances of each comparator are not sufficiently similar to Plaintiff's circumstances so as to create an inference that Plaintiff's termination was the result of racial discrimination. First, none of the comparators raised by Plaintiff have disciplinary records similar in length or scope to Plaintiff's disciplinary record.[7] And, unlike Plaintiff, most of the comparators raised by Plaintiff had no previous alcohol related disciplines prior to the incidents that Plaintiff proffers as comparison evidence. In addition, the alcohol related conduct of three of Plaintiff's comparators, Troopers Number 4, 7 and 11, occurred while the Troopers were off-duty, whereas several instances of Plaintiff's alcohol related misconduct occurred while Plaintiff was on duty, including reporting for work under the influence of alcohol. For example, Trooper Number 4 was suspended for one day for drinking in public while in uniform, but off-duty. (D.I. 67, Exh. 4 at 001720). Trooper Number 7 was suspend-

ed for one day for lifting her shirt at a troop party where she had been drinking. (D.I. 67, Exh. 7 at 002863; D.I. 56, Exh. A at ¶ 39). Trooper Number 11 was suspended for three days for illegally driving his personal vehicle on the beach in 1991 after an off-duty party where alcohol was consumed. (D.I. 67, Exh. 11 at 003045–003048). Although each of these Troopers received less severe punishment than Plaintiff, the Court cannot conclude that the circumstances involving these Troopers were sufficiently similar to Plaintiff's circumstances so as to create an inference of discrimination. Not only were these Troopers off duty at the time of the incidents described, but none of them had disciplinary records comparable to Plaintiff's record, and unlike Plaintiff, none were on probation at the time of their misconduct.

Similarly, Plaintiff directs the Court to the records of Trooper Number 6 and Trooper Number 8. Both Trooper Number 6 and Trooper Number 8 were involved in on duty traffic accidents stemming from alcohol consumption, but neither Trooper was terminated for his offense and neither was charged for violating the alcohol policy. (D.I. 67, Exh. 6 at 002842 & 002845, Exh. 8 at 002686–2707). While these Troopers were treated more leniently than Plaintiff, the Court cannot conclude that their circumstances were comparable to Plaintiff. Both Trooper Number 6 and Trooper Number 8 were drinking as part of undercover drug operations, and such drinking was authorized under the Delaware State Police's rules so as to prevent the officer from raising the suspicions of the suspected drug dealer. (D.I. 67, Exh. 6 at 002845; D.I. 75, Exh. L at ¶ 8; D.I. 56, Exh. A at ¶ 36, Exh. A–20). In addition, neither Trooper Number 6 nor Trooper

---

7. The comparators have been assigned num-     bers in order to protect their anonymity.

Number 8 were on probation during their misconduct and neither had a disciplinary record comparable to Plaintiff's record.

Plaintiff also directs the Court to the record of Trooper Number 3. Trooper Number 3 is currently incarcerated in a federal prison for bank robbery. (D.I. 69, Exh. 4 at 55–56). Trooper Number 3 also had a drug problem stemming from the use of prescription pain killers for a back injury. (D.I. 56, Exh. C at ¶ 26). However, the Delaware State Pension Board found that Trooper Number 3 qualified for disability benefits due to his back injury, and Trooper Number 3 retired. (D.I. 56, Exh. C. at ¶ 27). Shortly after his retirement, Trooper Number 3 was investigated for stealing drugs from a police locker; however the investigation was inconclusive. (D.I. 67, Exh. 3 at 002989–003021; D.I. 56, Exh. C at ¶ 26 n. 1). Plaintiff raises Trooper Number 3, because he continues to receive his pension benefits, even though he is incarcerated. Although the incidents involving Trooper Number 3 were under investigation while Trooper Number 3 was employed by the Delaware State Police, by the time Trooper Number 3 was charged with any criminal conduct, he was no longer employed by the Delaware State Police. (D.I. 56, Exh. C at ¶ 26–27). Thus, in the Court's view, the circumstances involving Trooper Number 3 are not substantially similar to Plaintiff so as to render Trooper Number 3 an appropriate comparison to Plaintiff.

Plaintiff also focuses on Trooper Number 1 as a comparator to Plaintiff. Trooper Number 1 was involved in an off-duty automobile accident and injured a citizen while driving under the influence of alcohol. (D.I.67, Exh. 1). Trooper Number 1 was disciplined with a 90 day suspension, demotion one rank, transfer to Field Training Office, alcohol counseling and one year probation. (D.I. 67, Exh. 1 at 000612). Plaintiff contends that while Trooper Number 1's conduct was more severe than Plaintiff in several respects, Trooper Number 1 was treated more leniently than Plaintiff. After reviewing the record as it relates to Trooper Number 1, the Court cannot conclude that Trooper Number 1's circumstances were similar to Plaintiff so as to give rise to an inference of discrimination. Trooper Number 1 was not on probation at the time of his misconduct and did not have a disciplinary record akin to Plaintiff. Further, the Court cannot say that Trooper Number 1 was treated more leniently than Plaintiff. In fact, Trooper Number 1 may have been treated more severely in some respects. Accordingly, the Court concludes that Plaintiff has not established that similarly situated officers were treated more favorably than Plaintiff, and therefore, Plaintiff's comparator evidence is insufficient to establish the fourth element of the prima facie case.

b. Plaintiff's evidence of Defendants' alleged failure to follow policies

Plaintiff next contends that an inference of discrimination should arise from Defendants' failure to comply with several of their policies. Specifically, Plaintiff contends that (1) he was terminated for violation of the substance abuse policy, which carried a maximum penalty of a twenty-day suspension; (2) the Defendants "stacked" charges against him; (3) Defendants never obtained authorization for administering an alcohol test to Plaintiff; and (4) Plaintiff was unfairly disciplined for abuse of sick leave.

First, Plaintiff contends that he was improperly terminated for violating the substance abuse policy, an offense which carries a maximum twenty-day penalty. However, Plaintiff's argument assumes a fact not established by the record, i.e. that Plaintiff was terminated for violating the substance abuse policy. Rather, the rec-

ord indicates that Plaintiff's discharge was based on his disciplinary record in total, including his prior offenses, as well as his misconduct during October 11, 12 and 13, 1998, while Plaintiff was on probation. (D.I. 55 at 15; D.I. 56, Exh. 23 at 13–15). Indeed, the record indicates that the Hearing Board recommended a penalty of 20 days without pay for Plaintiff's violation of the substance abuse policy, a penalty consistent with the Delaware State Police's substance abuse policy. Because Plaintiff's allegation that he was dismissed because of a violation of the substance abuse policy has no basis in fact, Plaintiff's allegation does not create an inference of racial discrimination.

Plaintiff next contends that an inference of racial discrimination should be drawn from Defendants' alleged failure to adhere to their policy of not "piling on" or "stacking charges" against a State Trooper. To this effect, Plaintiff contends that the Delaware State Police piled on a charge of "poor judgment" against Defendant and used that charge to terminate him, because they knew that Plaintiff could not be terminated for a violation of the substance abuse policy alone. As with Plaintiff's previous argument, Plaintiff assumes a fact not established by the record. Specifically, Plaintiff assumes his discharge was based on the poor judgment charge against him. However, as the Court noted previously the record indicates that Plaintiff's discharge was based on his disciplinary record in total, including his prior offenses and his misconduct while on probation. (D.I. 55 at 15; D.I. 56, Exh. 23 at 13–15).[8] Accordingly, the Court concludes that Plaintiff's allegation that Defendants improperly stacked charges against him is insufficient to create an inference that Plaintiff's discharge was the result of racial discrimination.

Plaintiff also contends that the abuse of sick leave charge was improperly stacked against him. However, the record again indicates that Plaintiff was not dismissed for this charge. Plaintiff also suggests that white State Troopers were treated differently than African–American State Troopers with respect to abuse of sick leave. To this effect, Plaintiff contends that three of the five individuals who have ever been charged with abuse of sick leave were African–Americans, including Plaintiff. The Court is not persuaded that Plaintiff's evidence on this point establishes an inference of racial discrimination. Other than Plaintiff, two white officers and two African American officers were charged with abuse of sick leave. Of the two African–American officers, the charge against one was dismissed. (D.I.67, Exh. 14). The remaining African American officer was punished with a 40 hour suspension, however, he was also charged with improper use of his police vehicle and conduct unbecoming an officer. (D.I.67, Exh. 14). With regard to the white officers charged, one was suspended for eight hours and the other was suspended for 16 hours. (D.I.67, Exh. 14). The penalty recommended for Plaintiff's abuse of sick leave was a 20 hour suspension; however, Plaintiff was charged with two counts of sick leave, while the white comparators Plaintiff raises were only charged with one count of sick leave. (D.I.67, Exh. 14). Thus, the Court cannot conclude that the

---

8. Although the Hearing Board on the failing to exercise sound judgment charge recommended dismissal, by statute only the Secretary can terminate an employee of the Department of Public Safety. *See* 29 *Del. C.* § 8203(6). Because the record indicates that the Secretary's decision was based on the totality of Plaintiff's record, Plaintiff's assumption that he was terminated because of the poor judgment charge lacks a factual basis in the record.

penalty recommended against Plaintiff for abuse of sick leave was disproportionate compared with the penalty recommended for white State Troopers. Accordingly, the Court concludes that Plaintiff's evidence concerning Defendants' application of the abuse of sick leave policy against Plaintiff is insufficient to raise an inference of racial discrimination.

In addition to their alleged failure to adhere to their substance abuse policy and their policy against stacking charges, Plaintiff contends that an inference of racial discrimination should arise from Defendants' alleged failure to obtain authorization for administering an alcohol test to Plaintiff and their alleged failure to adhere to the policy of separating those bringing disciplinary charges against a State Trooper from those deciding the merits of the charges against a State Trooper. Accepting the merits of Plaintiff's allegations, the Court cannot conclude that these alleged failures, standing alone, are sufficient to establish an inference of racial discrimination against Plaintiff. Plaintiff offers no evidence that white State Troopers were treated differently by Defendants with respect to these policies, and Plaintiff offers no other evidence connecting Defendants' failure to adhere to these policies to racial discrimination by Defendants. Accordingly, the Court concludes that Plaintiff's evidence with regard to Defendants' failure to adhere to these policies is insufficient to establish an inference of racial discrimination concerning Plaintiff's termination.

2. Whether Plaintiff has offered sufficient evidence for a reasonable factfinder to conclude that Defendants' reason for Plaintiff's discharge was pretextual

■ However, even if the Court were to conclude that Plaintiff's evidence was sufficient to create an inference of discrim-

ination for purposes of establishing a prima facie case of racial discrimination, the Court concludes that Plaintiff has not offered sufficient evidence for a reasonable factfinder to conclude that Defendants' reasons for Plaintiff's discharge were a pretext for racial discrimination. Defendants have articulated a legitimate nondiscriminatory reason for Plaintiff's discharge. Specifically, Defendants contend that Plaintiff was discharged because of his disciplinary record in total, including his prior offenses, as well as his misconduct during October 11 through 13 while Plaintiff was on probation. (D.I. 55 at 15; D.I. 56, Exh. 23 at 13–15). Because Defendants have articulated a legitimate nondiscriminatory reason for terminating Plaintiff, the presumption of discrimination which arises from Plaintiff's prima facie case disappears. Accordingly, Plaintiff must "cast sufficient doubt upon the employer's proffered reasons to permit a reasonable factfinder to conclude that the reasons are incredible." *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1072 (3d Cir.1996).

A plaintiff can cast sufficient doubt on a defendant's legitimate nondiscriminatory reason by showing "weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action [such] that a reasonable factfinder could rationally find them 'unworthy of credence.'" *Reeves*, 120 S.Ct. at 2106 (citations omitted). In this case, Plaintiff raises the same comparator and violation of policy evidence in the pretext stage that he raised in the prima facie case stage of his argument. Thus, the Court's analysis of Plaintiff's evidence at this stage would be essentially the same as its analysis in the prima facie case stage, except that the Court must consider the more stringent question of whether the evidence is sufficient to establish pretext, rather than

whether the evidence is sufficient to establish an inference of discrimination.

Plaintiff contends that his comparator evidence is sufficient to show pretext. However, as the Court discussed previously, Plaintiff has not shown that these individuals were similarly situated to Plaintiff as far as the nature of the offenses against them and their prior disciplinary records.[9] *See Shirley v. James River Corp.*, 1996 WL 250044, *5 (D.Del. Apr. 11, 1996) (granting summary judgment on plaintiff's claim that white co-worker was treated more leniently because white co-worker's prior disciplinary record was not as serious as plaintiff's and concluding that "[c]omparison of disciplinary measures between two employee's dissimilar behavior ... is not a valid exercise"); *Bluebeard's Castle Hotel v. Government of the Virgin Islands*, 786 F.2d 168, 171 (3d Cir.1986) (overturning district court's affirmance of department of labor's conclusion that employer's reason for discharge was pretext for discrimination, because misconduct of comparator was not as severe as plaintiff's misconduct in that comparator did not use obscenities or threaten supervisors).

In addition, with regard to six of the comparators raised by Plaintiff, Troopers Number 4, 5, 6, 7, 8 and 11, these Troopers were disciplined by different decision makers. As other courts have recognized, "different employment decisions concerning different employees, made by different supervisors, are seldom sufficiently comparable to establish a prima facie case of discrimination for the simple reason that different supervisors may exercise their discretion differently." *Radue v. Kimberly–Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000). Because "these distinctions sufficiently account for any disparity in treatment, [they] ... prevent[ ] an inference of discrimination." *Id.* Accordingly, the Court concludes that Plaintiff has not offered sufficient evidence from which a reasonable jury could conclude that Defendants' reason for Plaintiff's termination was a pretext for racial discrimination.

As for Plaintiff's evidence that Defendants failed to follow their policies or procedures in dealing with Plaintiff, the Court likewise concludes that Plaintiff has not offered sufficient evidence for a reasonable jury to conclude that Defendants' legitimate nondiscriminatory reason was a pretext for discrimination. In support of his argument that an employer's violation of its own policies may be sufficient evidence to establish pretext, Plaintiff directs the Court to *Rivers–Frison v. S.E. Missouri Comm. Treatment Cntr.*, 133 F.3d 616, 620–621 (8th Cir.1998). While the *Rivers–Frison* court recognized that such evidence may be sufficient to establish pretext, the court also noted that "evidence that the [defendant's] proffered reasons for termination were pretextual will only defeat summary judgment if the evidence could persuade a reasonable fact-finder that [plaintiff] was discharged *because of* intentional race discrimination." *Id.* at 621 (citation omitted) (emphasis in original). In *Rivers–Frison*, the court specifically observed that the plaintiff's evidence concerning the employer's failure to adhere to its policy "comes with a backdrop suggest-

---

9. Plaintiff suggests that the Court cannot review the conduct of the comparators in comparison with Plaintiff's conduct, because the court would be usurping the role of the jury by rendering a factual finding. Neither the record of the comparators nor the record of Plaintiff are in dispute in this case, and as this Court's approach in *Shirley* makes clear, the Court can determine whether the comparator's conduct is sufficiently similar to Plaintiff's conduct such that a reasonable jury could conclude from the comparator evidence that Defendants' reason for Plaintiff's discharge was a pretext for racial discrimination.

ing racial animus," including the fact that the plaintiff was one of only two African–American employees out of 277 employees and both were separated from the company by the end of the year, and numerous employees including the director of the Center made derogatory comments about plaintiff's race. Unlike *Rivers–Frison*, in this case, Plaintiff's evidence that Defendants failed to adhere to their policies does not come with a "backdrop" of racial animus. Indeed, Plaintiff has not offered any evidence that Defendants discharged Plaintiff as a result of racial discrimination. Plaintiff's disciplinary record with the Delaware State Police was both lengthy and severe in nature. In addition, Plaintiff was on probation at the time of his termination. The State Police rules and regulations provide that any offense committed by an officer during probation may be grounds for dismissal at the discretion of the Superintendent. (D.I.56, Exh. 20). Despite his probation, Plaintiff reported to work under the influence of alcohol and engaged in other policy violations. Because Plaintiff has failed to cast sufficient doubt on Defendants' proffered legitimate reasons for Plaintiff's discharge, and because Plaintiff has not offered sufficient evidence from which a reasonable factfinder could conclude that Defendants intentionally discriminated against Plaintiff based on his race, the Court concludes that Plaintiff cannot establish pretext. Accordingly, the Court will grant Defendants' Motion For Summary Judgment.

## CONCLUSION

For the reasons discussed, the Court will grant Defendants' Motion for Summary Judgment.

An appropriate Order will be entered.