Reed L. GUTHRIE, Plaintiff–Appellant,

v.

**TIFCO INDUSTRIES, et al.,**
Defendants–Appellees.

No. 90–2635.

United States Court of Appeals,
Fifth Circuit.

Sept. 13, 1991.

Rehearing Denied Oct. 21, 1991.

Steven R. Baker, Michael Y. Saunders, John W. Tavormina, Helm, Pletcher, Hogan, Bowen & Saunders, Houston, Tex., for plaintiff-appellant.

V. Scott Kneese, Nathan Wesely, Bracewell & Patterson, Houston, Tex., for Tifco and Austin.

Before THORNBERRY, JONES, and WIENER, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Plaintiff-appellant Reed L. Guthrie sued Tifco Industries alleging a violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–34, and pendent state law claims for wrongful discharge, breach of an implied contract, and intentional infliction of emotional distress. The district court dismissed the pendent state law claims, and granted Tifco's motion for summary judgment on the ADEA claim.

Guthrie has appealed. Finding no reversible error, we AFFIRM the judgment of the district court.

## I.

## BACKGROUND

Tifco is a family owned business that distributes fasteners and automotive and industrial supplies. Guthrie was a valued Tifco employee from 1969 until he resigned in 1988. During those nineteen years, Guthrie received several promotions and salary increases. In 1975, Guthrie became Vice President of Purchasing and in 1985, he was promoted to General Manager.

After the president and founder of Tifco, Richard Brown, retired in 1985, his son, Robert Brown became president. Guthrie asserts that on three occasions between 1985 and 1987, Richard Brown remarked that Robert Brown would "need to surround himself with people his age." Guthrie also claims that after he returned to work following a serious illness in 1985, both Richard and Robert Brown asked "how much longer he wanted to work."

Tifco alleges that Guthrie's performance began to decline in 1987. Robert Brown testified in his deposition that Guthrie showed no interest in supervising employees, making decisions, or accepting responsibility. In January 1988, Robert Brown decided to move Guthrie from Vice President to Senior Buyer and reduce Guthrie's annual salary from $86,000 to $50,000, a forty percent decrease. Brown planned to discuss these changes with Guthrie on February 1, 1988, and prepared a handwritten list that detailed his dissatisfaction with Guthrie's performance. Guthrie, having discovered Brown's intentions before the meeting, resigned. He was then fifty-seven years old when he resigned.

## II.

## DISCUSSION

### A. Standard of Review.

We review a summary judgment *de novo*, applying the same criteria as the district court. *Degan v. Ford Motor Co.,*

869 F.2d 889, 892 (5th Cir.1989). Summary judgment is appropriate if there is "no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

### B. The Elements of an ADEA Claim.

The elements of a Title VII case, as set forth in *McDonnell–Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), apply to suits arising under the ADEA. *Bohrer v. Hanes Corp.,* 715 F.2d 213, 218 (5th Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984). To establish a *prima facie* showing of age discrimination the plaintiff must demonstrate that: (1) he was a member of the protected class; (2) he was qualified to perform the job; (3) he was discharged; and (4) he was replaced by a younger person or a person outside the protected class. *Elliott v. Group Medical & Surgical Servs.,* 714 F.2d 556, 562 (5th Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984).

A *prima facie* case creates a rebuttable presumption of intentional discrimination. *Laurence v. Chevron, U.S.A., Inc.,* 885 F.2d 280, 283 (5th Cir.1989) (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981)). To rebut this presumption the employer must articulate some legitimate, non-discriminatory reason for its action. *Id.* An employer may sustain this burden by introducing admissible evidence of an explanation that would be "legally sufficient to justify a judgment for the defendant." *Bohrer,* 715 F.2d at 218 (quoting *Burdine,* 450 U.S. at 248, 101 S.Ct. at 1094).

If the employer articulates legitimate, non-discriminatory reasons for its actions, the presumption created by the plaintiff's *prima facie* case dissolves and the burden reverts to the plaintiff to prove that the employer's reasons were pretextual. *Thornbrough v. Columbus & Green-*

*ville R.R. Co.*, 760 F.2d 633, 646 (5th Cir. 1985). The plaintiff can establish pretext by introducing evidence to prove that the reason stated by the employer, "though facially adequate, was untrue as a matter of fact or was, although true, a mere cover or pretext" for illegal discrimination. *Elliott*, 714 F.2d at 566. The trier of fact may not disregard the defendant's explanation without countervailing evidence that it was not the real reason for the discharge. *Id.*

### 1. *Guthrie's Prima Facie Case.*

While Tifco concedes the first three elements of the *McDonnell–Douglas* test, it denies that Guthrie was actually or constructively discharged. Tifco contends that it did not want Guthrie to resign, but that Guthrie was now best suited by experience and training to be a Senior Buyer. According to Guthrie, the position of Senior Buyer represented a demotion, an intolerable situation from which he was forced to resign.

 Constructive discharge can form the basis for a Title VII claim. *Vaughn v. Pool Offshore Co.*, 683 F.2d 922, 926 (5th Cir.1982). In this case, Tifco demoted Guthrie from Vice President and General Manager to Senior Buyer, reduced his salary by forty percent, and assigned him to work for a man with less experience who was seventeen years younger than himself and a person whom he had helped train. Tifco points out that Guthrie's salary as Senior Buyer was higher than that of any other Tifco employee except the Vice Presidents. Although the circumstances surrounding Guthrie's demotion certainly were not outrageous, we are mindful that "to establish a prima facie case, a plaintiff need only make a very minimal showing." *Thornbrough*, 760 F.2d at 639. We accordingly assume *arguendo* that a reasonable person in Guthrie's position could have felt compelled to resign. Thus, Guthrie established his prima facie case.

### 2. *Tifco's Stated Reasons for Demoting Guthrie.*

 Tifco contends that it demoted Guthrie because Robert Brown lost confidence in Guthrie's management ability. Brown prepared a handwritten list of thirteen events leading to his loss of confidence in Guthrie. These events were:

1. Guthrie's failure to manage and train employees, including problems with Julie Newmiller, Joyce Hildebrandt, Bootsie Rucker, and Irene Konvica, resulting in Robert Brown's continued involvement in personnel problems;

2. Guthrie's failure to maintain adequate stock of basic hex nuts and washers in 1987;

3. Guthrie's failure to remain knowledgeable about quality dependable sources, for example Detroit diamond;

4. Guthrie's sleeping during internal managers meetings and during division managers meeting;

5. Guthrie's misbuying stock lines under his direct supervision;

6. Guthrie's failure to train buyers to buy within parameters and adjust stock between locations;

7. Guthrie's failure to respond to notices from the Texas Water Commission, resulting in potential revocation of the water permit;

8. Guthrie's failure to handle the internal recognition awards at the 1987 Tifco Christmas party;

9. Guthrie's failure to handle short buying responsibility resulting in the transfer of that responsibility to the distribution department in February 1987;

10. Guthrie's failure to evaluate the need for the product prior to ordering a fifty year supply of $9/16$ nuts;

11. Guthrie's failure to negotiate a price for an entire series of nuts, instead ordering dissimilar nuts from RB & W and Detroit Diamond;

12. Guthrie's failure to deal with an angry vendor without passing the responsibility on to Robert Brown;

13. Guthrie's failure to obtain a credit for defective drill bits from Butterfield, although he had months to

secure the credit and Butterfield acknowledged the drill bits were defective.

In addition to these reasons, Tifco states that in January 1988, Guthrie repeatedly failed to implement specific buying parameters that the managers had adopted to reduce inventory levels. These non-discriminatory reasons for Guthrie's demotion are sufficient to rebut Guthrie's *prima facie* case and dissolve the inference of discrimination. After Tifco articulated these reasons for its employment decision, Guthrie was required to show that these reasons were not legitimate but were pretext to obscure discrimination. Because Tifco articulated its non-discriminatory justifications for its employment decision in a motion for summary judgment, Guthrie was not required to prove pretext at that stage of the proceedings; instead, he needed to raise a genuine issue of fact regarding pretext. *See Thornbrough,* 760 F.2d at 646.

### 3. *Guthrie's Proof of Pretext.*

■ In his response to Tifco's motion for summary judgment, Guthrie denied that he had ever slept during managers' meetings. After the district court granted Tifco summary judgment, Guthrie filed a motion for reconsideration in which he disputed several of Tifco's other stated reasons for his demotion.[1] Specifically, Guthrie disputes several of the criticisms on Brown's handwritten list, including allegations that Guthrie failed: to handle personnel problems; to maintain hex nuts and washers; to remain knowledgeable about sources, specifically Detroit Diamond; to handle short buying responsibility; to evaluate the need for 9/16 nuts before ordering a fifty year supply; and, to deal directly with an angry vendor.

■ Tifco and Guthrie argue these specific points at length in their briefs. However, we need not determine which party more accurately describes each incident. Even if we accept Guthrie's versions, he has failed to establish pretext. What he has shown is that Guthrie and Brown differed in their views of certain business decisions. "The ADEA was not intended to be a vehicle for judicial second-guessing of business decisions." *Thornbrough,* 760 F.2d at 647.

Further, Guthrie simply failed to dispute Brown's remaining complaints that Guthrie failed: to train buyers; to respond to notices from the Texas Water Commission; to handle awards at the Christmas party; to negotiate a price for an entire series of nuts; and, to obtain a $10,739.03 credit for defective drill bits. Absent countervailing evidence, the trier of fact must accept the defendant's explanation as the real reason for the discharge. *Elliott,* 714 F.2d at 566. Brown's unrefuted complaints are sufficient explanation for demoting Guthrie; Brown lost confidence in Guthrie's management ability. As Guthrie failed to create a genuine fact issue whether Tifco's stated reasons for his demotion were pretextual, Tifco was entitled to judgment as a matter of law.

### 4. *Age–Related Comments.*

■ Guthrie also contends that Richard Brown's comments that Robert Brown would "need to surround himself with people his age" is direct evidence of age bias. Guthrie claims that Richard Brown made

---

1. The district court granted Tifco's motion for summary judgment on June 11, 1990, and entered final judgment on June 13, 1990. Guthrie filed his motion for reconsideration on July 10, 1990. Fed.R.Civ.P. 59 specifies that motions to alter or amend a judgment must be filed no later than 10 days after entry of the judgment. Therefore, Tifco contends that Guthrie's Rule 59 motion for reconsideration was untimely and should be treated as a Rule 60(b) motion for relief from judgment, and the district court's denial of this motion should be reviewed for an abuse of discretion.

The transcript of the June 11, 1990, hearing reveals that the district court was fully aware of the time restrictions of rule 59, but nonetheless instructed Guthrie to file his motion for reconsideration on July 20, 1990. Counsel for Tifco agreed to this deadline. Although we do not approve of the district court's varying time limits set forth in the Federal Rules of Civil Procedure, in this case we will consider the evidence presented in Guthrie's motion to reconsider as if it were filed in accordance with the rules. Because Tifco will suffer no prejudice as a result, and Guthrie should not be penalized for complying with the district court's instructions.

these comments on three occasions between 1985 and 1987. However, accepting Guthrie's allegations as true for purposes of reviewing this summary judgment, Richard Brown would have made these statements after his retirement, when he no longer made personnel decisions for Tifco. Further, these statements are too vague to be accepted as direct evidence of age-bias; Richard Brown could have been referring to his decision to retire. Finally, these statements were made at least a year before Guthrie's demotion. Because these comments are vague and remote in time and administrative hierarchy, they are no more than "stray remarks," which are insufficient to establish discrimination. *See Normand v. Research Institute of America, Inc.*, 927 F.2d 857, 864 n. 3 (5th Cir. 1991).

### C. Intentional Infliction of Emotional Distress.

 The district court dismissed Guthrie's pendent state law intentional infliction of emotional distress claim, apparently finding that Guthrie had failed to state a claim for relief. Although Tifco did not file a motion to dismiss pursuant to Rule 12(b)(6), the district court was authorized to consider the sufficiency of the complaint on its own initiative. *See* 5A C. Wright & C. Miller, *Federal Practice & Procedure* § 1357, at 301 (1990).

 Under Texas law, to prevail on a claim for intentional infliction of emotional distress a plaintiff must establish that the defendant acted intentionally or recklessly; that the conduct was "extreme and outrageous"; that the actions of the defendant caused the plaintiff emotional distress; and, that the emotional distress suffered by the plaintiff was severe. *Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 306 (5th Cir.1989) (quoting *Tidelands Auto. Club v. Walters*, 699 S.W.2d 939, 942 (Tex.App—Beaumount 1985, writ ref'd n.r.e.).

 Guthrie contends that the evidence created genuine issues of fact on each element of his intentional infliction of emotional distress claim. In the precise wording of his objection, Guthrie apparently confuses the district court's dismissal order with a *sua sponte* summary judgment. If the district court had reviewed evidence outside the pleadings, this dismissal would be construed as a summary judgment, and the quality of the evidence would be pertinent. 5A C. Wright & C. Miller, *supra* § 1356 at 299. Here, however, this technical distinction has no bearing on the propriety of the district court's action. Even if Tifco's employees' behavior toward Guthrie was premeditated and organized, it simply was not extreme or outrageous.

### D. Wrongful Discharge.

 The district court erroneously dismissed Guthrie's wrongful discharge claim as barred under the Texas two-year statute of limitations. Tex.Civ.Prac. & Rem.Code Ann. § 16.003(a) (Vernon 1986). Guthrie filed this suit, however, only fourteen months after his discharge. "Nonetheless, we may affirm a summary judgment on grounds other than those relied upon by the district court when we find in the record an adequate and independent basis for that result." *Meza v. General Battery Corp.*, 908 F.2d 1262, 1274 (5th Cir.1990). Such a basis exists here.

 Under Texas law, an employment relationship is generally terminable at the will of either party. *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733 (Tex. 1985). The one narrow exception to Texas' employment-at-will doctrine "covers only the discharge of an employee for the *sole* reason that the employee refused to perform an illegal act." *Id.* at 735 (emphasis added). Because the refusal to perform an illegal act must be the sole reason for the plaintiff's discharge, Guthrie's claims of age discrimination and wrongful discharge are mutually exclusive.

 In any event, this narrow exception applies only to employees discharged for refusing to perform acts that carry criminal penalties. *See Hancock v. Express One Int'l, Inc.*, 800 S.W.2d 634 (Tex.App.—Dallas 1990, writ filed). Guthrie contends that he was instructed to violate unspecified customs regulations, but he failed to allege that these regulations carry criminal penalties. Consequently, he

could not establish that he was discharged for refusing to perform an illegal act. The order of dismissal was therefore appropriate.

## CONCLUSION

For the foregoing reasons we AFFIRM the judgment of the district court.