### Gregory TAYLOR, Plaintiff,

v.

## PROCTER & GAMBLE DOVER WIPES, Defendant.

### No. Civ.A.00–593–JJF.

United States District Court, D. Delaware.

Feb. 6, 2002.

---

James E. Liguori, Liguori, Morris & Redding, Dover, DE, of counsel, Olugbenga O. Abiona, Solo Practitioner, Philadelphia, PA, for plaintiff.

Barry Willoughby, Joanne Springer–Messick, Drewry N. Fennell, Young, Conaway, Stargatt & Taylor, LLP, Wilmington, DE, for Defendant.

### MEMORANDUM OPINION

FARNAN, District Judge.

Pending before the Court is a Motion for Summary Judgment (D.I.27) and a Motion To Strike, Or In The Alternative, For Summary Judgment On Plaintiff's Claim Of Retaliation (D.I.45) filed by Defendant, The Procter & Gamble Dover Wipes Company.[1] For the reasons set forth below, the Court will grant both of Defendant's Motions.

### BACKGROUND

#### I. Factual Background

Defendant, The Procter & Gamble Dover Wipes Company (hereinafter "P & G") is a wholly-owned subsidiary of The Procter & Gamble Company. (D.I. 29 at A–17). P & G purchased the Dover Wipes Company from Kimberly–Clark Corporation on June 30, 1996. (D.I. 29 at A–17).

Plaintiff, Gregory Taylor (hereinafter "Plaintiff"), is a forty six (46) year-old African–American male. (D.I. 29 at A–26). He was hired as an operating technician at the Dover facility on May 12, 1981. (D.I. 28 at 4). Plaintiff has an extensive criminal record in Delaware, including charges of criminal trespass, offensive touching, carrying a concealed deadly weapon, and possession of a deadly weapon during the commission of a felony. (D.I. 29 at A–26). Prior to 1998, Plaintiff had been arrested and charged on two occasions for crimes related to assault on former girlfriends. (D.I. 29 at A–26).

On September 22, 1998, Plaintiff was arrested and charged for a third time with violent crimes against his then girlfriend and fellow P & G employee, Ms. Maureen Ranger, with whom he was living at the time. (D.I. 29 at A–26). Specifically, Plaintiff was charged with rape, attempted rape, reckless endangerment, unlawful imprisonment, assault, and unlawful sexual contact. (D.I. 29 at A–26). As a result of these charges, Plaintiff was incarcerated from September 22, 1998 to September 25, 1998, when he was released on bail pending trial. (D.I. 29 at A–20).

On September 28, 1998, Mr. Joe Holler, P & G's Human Resources Manager, returned from vacation and was informed of Plaintiff's incident with Ranger. (D.I. 32, Ex. 3 at 25–26). That same day, Holler sent Plaintiff a letter at the direction of Ms. Leytrice B. Henson, P & G's Plant Manager and the person directly responsible for disciplining employees when they have engaged in misconduct.[2] (D.I. 29 at A–1). Specifically, Holler instructed Plaintiff not to report to work on September 29, 1998 and to contact P & G to arrange a meeting regarding his return to work. (D.I. 29 at A–1). Additionally, Holler informed Plaintiff that, in the interim, he

1. P & G contends that it has filed a separate Motion with respect to Plaintiff's retaliation claim because it was not aware that a retaliation claim had been alleged at the time P & G filed its Motion For Summary Judgment (D.I.27). (*See* D.I. 45). Accordingly, by both Motions (D.I. 27 and D.I. 45), P & G seeks to dismiss and/or strike all of Plaintiff's claims.

2. Plaintiff contends that Holler and Rick Olin, Henson's predecessor, were also involved in making disciplinary decisions. (D.I. 31 at 30–32). Specifically, Plaintiff contends that Holler and Olin took an active part in all decisions regarding Plaintiff's employment status following Plaintiff's incident with Ranger. (D.I. 31 at 30–32). The record is clear, however, that Henson was the final decision-maker for all disciplinary matters at the time Plaintiff's incident with Ranger was brought to P & G's attention. (D.I.49, Ex. 1). Indeed, even Plaintiff himself has indicated that he has no reason to believe that Olin was involved in making decisions regarding Plaintiff's employment. (D.I. 32, Ex. 1 at 21).

would be placed on leave of absence with pay. (D.I. 29 at A–1).

Holler then began a limited investigation into the circumstances surrounding the criminal charges filed against Plaintiff. (D.I. 32, Ex. 3 at 88–100). Holler spoke with Detective Gordon Bowers of the Delaware State Police, the Kent County Superior Court, and Mr. Walt Clements of P & G Corporate Security. (D.I. 32, Ex. 3 at 88–100). During the course of this limited investigation, Holler learned that Ranger had suffered serious bruises as a result of the incident, the charges against Plaintiff were very serious, and Plaintiff had an extensive criminal record. (D.I. 32, Ex. 3 at 88–100). Holler reported the results of this limited investigation to Henson. (D.I. 32, Ex. 2 at 49–54).

On October 12, 1998, after considering Plaintiff's charges and the results of Holler's investigation, Henson advised Plaintiff by way of letter that Plaintiff was being placed on unpaid leave status in light of his pending criminal case. (D.I. 29 at A–2). Additionally, Henson instructed Plaintiff to update P & G periodically regarding any progress or developments in his criminal case, and referred Plaintiff to P & G's Employee Assistance Program in the event that he needed an avenue of support to work through his situation. (D.I. 29 at A–2).

On October 23, 1998, Plaintiff responded to Henson's letter, accusing her of harboring racial and gender bias against him. (D.I. 29 at A–5). Henson replied to Plaintiff's accusations on November 2, 1998. (D.I. 29 at A–6). Henson assured Plaintiff that her decisions "were not one sided or based on race and gender." (D.I. 29 at A–6). Henson also explained that her decisions were based on what she believed to be in P & G's best interest, and advised Plaintiff that, "given the serious nature of the charges" filed against him, he would remain on leave of absence without pay.

(D.I. 29 at A–6). Finally, for a second time, Henson requested that Plaintiff keep P & G advised regarding any developments in his criminal case. (D.I. 29·at A–6).

Henson and Holler arranged a meeting with Plaintiff, which occurred on December 1, 1998 (hereinafter "12/1/98 meeting"). (D.I. 32, Ex 2 at 120). During that meeting, Henson informed Plaintiff of her decision to leave him on unpaid leave of absence status. (D.I. 32, Ex. 2 at 135). Specifically, Henson advised Plaintiff that the allegations against him were very serious in nature, and she must act in P & G's best interest. (D.I. 32, Ex. 2 at 135–140).

On December 11, 1998, Plaintiff filed a charge of discrimination with the Delaware Department of Labor (hereinafter "DDOL") and the Equal Employment Opportunity Commission (hereinafter "EEOC"). (D.I. 29 at A–9). In that Complaint, Plaintiff alleged that he was discriminated against based on his race and sex. (D.I. 29 at A–9). Specifically, Plaintiff asserted that he knew of:

> similarly situated (white) employees who have been accused of and convicted of felony and misdemeanor[ ] charges but were allowed to continue their employment with the company during the investigation of those charges, after they were convicted of the charges, and after they had served their sentences.

(D.I. 29 at A–9). Additionally, Plaintiff noted that both Ranger, his victim, and Henson, the person who made the decision to place him on leave of absence without pay, were female. (D.I. 29 at A–9).

On December 15, 1998, Plaintiff's then attorney sent a letter to Henson requesting that Plaintiff be reinstated. (D.I. 29 at A–14). Additionally, Plaintiff's attorney indicated that he would advise Plaintiff to withdraw his charge of discrimination in the event that Plaintiff was permitted to return to work. (D.I. 29 at A–14).

On January 19, 1999, P & G's counsel, Steven Jemision, Esq., filed a Position Statement in response to Plaintiff's DDOL discrimination charge, asserting that the decision to suspend Plaintiff was in no way based on discriminatory motives. (D.I. 29 at A–17). The DDOL issued its determination on August 31, 1999, finding no cause to believe any discrimination had occurred. (D.I. 29 at A–30). The DDOL based its ruling on witness interviews, a fact-finding session, Plaintiff's charge, and P & G's Position Statement. (D.I. 29 at A–30).

In July 1999, Ms. Donna Shaw replaced Holler as P & G's new Human Resources Manager. At the direction of Henson, Shaw wrote to Plaintiff on December 21, 1999, advising Plaintiff that his employment was terminated. (D.I. 29 at A–34). Shaw indicated that Plaintiff's discharge was due to the risk he posed to other P & G employees, the length of his leave of absence status, and his failure to update P & G regarding the status of his criminal action. (D.I. 29 at A–34).

Shortly thereafter, on January 4, 2000, Plaintiff entered into a plea agreement in his criminal action with the prosecutor's office. (D.I. 29 at A–35). Plaintiff pled guilty to two counts of assault in exchange for the dismissal of the rape, unlawful imprisonment, and other more serious charges. (D.I. 29 at A–35).

On February 10, 2000, the EEOC adopted the DDOL's findings and forwarded a dismissal and Notice of Rights to Plaintiff. (D.I. 29 at A–36). On March 31, 2000, Jemison corresponded with Plaintiff's attorney, advising him that P & G would not agree to Plaintiff's reinstatement. (D.I. 29 at A–37).

**II. Procedural Background**

Plaintiff initiated the instant action on May 4, 2000. By his Complaint, Plaintiff alleges that P & G violated his rights under Title VII of the Civil Rights Act by placing him on leave of absence without pay and subsequently terminating his employment. Specifically, Plaintiff alleges that he was discriminated against because of his status as an African–American male.[3] Additionally, Plaintiff alleges that he was retaliated against for filing charges of discrimination with the DDOL and EEOC, expressing concern about P & G's treatment of African–Americans, and engaging in correspondence with P & G, wherein he protested P & G's adverse actions.[4]

**3.** Plaintiff consistently repeats that his claim is based on his status as both an African–American and a male. As an initial matter, courts have declined to extend protection to combinations of classes. *See Floyd v. State of New Jersey,* 1991 WL 143456, *4 (D.N.J.1991) (declining to afford plaintiff protection as a "black male," as opposed to protection as an African–American and protection as a male); *see also Hankins v. Temple University,* 829 F.2d 437 (3rd Cir.1987) (treating race and gender differently). Further, given the structure and context of Plaintiff's argument, the Court finds that Plaintiff's claim is based on racial discrimination and not reverse gender discrimination.

**4.** P & G contends that Plaintiff's Complaint fails to specifically allege a claim for retalia-

tion, and thus, Plaintiff's retaliation claim should be barred because it is unfair and prejudicial to permit Plaintiff to add a new claim at this stage in the proceedings. (D.I.45). Although Plaintiff's Complaint does not specifically allege a claim for retaliation, Plaintiff's Complaint does generally allege a Title VII violation. Because the Court recognizes that Plaintiff was proceeding pro se when he filed his Complaint and because Plaintiff indicated in his answers to interrogatories that he was pursuing a claim for retaliation, the Court will construe Plaintiff's Complaint to include a retaliation claim for the purposes of P & G's Motion To Strike, Or In The Alternative, For Summary Judgment On Plaintiff's Claim Of Retaliation (D.I.45).

The parties have completed discovery in this matter, and P & G has filed the instant Motions (D.I. 27; D.I. 45).

## DISCUSSION

### I. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In determining whether there is a triable dispute of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976). However, a court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). Thus, to properly consider all of the evidence without making credibility determinations or weighing the evidence the "court should give credence to the evidence favoring the [non-movant] as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Id.*

To defeat a motion for summary judgment, Rule 56(c) requires the non-moving party to:

> do more than simply show that there is some metaphysical doubt as to the material facts.... In the language of the Rule, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." ...
> Where the record taken as a whole could not lead a rational trier of fact to find

for the non-moving party, there is "no genuine issue for trial."

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Accordingly, a mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### II. Plaintiff's Discrimination And Retaliation Claims

#### A. *The McDonnell Douglas Framework*

■ Discrimination and retaliation claims under Title VII are analyzed under the framework set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Krouse v. American Sterilizer Co.,* 126 F.3d 494, 500 (3rd Cir.1997) (holding that the analytical framework for a retaliation claim is the same as that for the underlying discrimination charge). Under this burden-shifting framework, the plaintiff must first establish a prima facie case of discrimination or retaliation. *Reeves,* 120 S.Ct. at 2106. Once a prima facie case is established, the burden of production shifts to the defendant to produce a legitimate non-discriminatory reason for the adverse or retaliatory employment action taken against the plaintiff. *Id.* Because the burden of persuasion does not shift at this stage, the employer's legitimate non-discriminatory reason is not evaluated insofar as its credibility is concerned. *Id.* Once a legitimate non-discriminatory reason is proffered, the presumption of discrimination or retaliation created by the prima facie case "drops away." *Id.* At this point, the plaintiff must proffer sufficient evidence for the fact finder to conclude by a preponderance of the evidence that the

legitimate non-discriminatory reasons offered by the employer were not true, but were a pretext for unlawful discrimination or retaliation. Although the prima facie case and the inferences drawn therefrom may still be considered at the pretext stage, this evidence must be combined with sufficient evidence to permit the trier of fact to conclude that the employer intentionally discriminated or retaliated against the plaintiff. *Id.* To this effect, it is not enough for the fact finder to disbelieve the defendant's legitimate non-discriminatory reason. Rather, even if the fact finder finds the defendant's reason unpersuasive or contrived, there must still be sufficient evidence for the fact finder to believe the plaintiff's explanation for the adverse action, i.e. that the defendant intentionally discriminated or retaliated against the plaintiff. *Id.* at 2108–2109.

B. *Whether P & G Is Entitled To Summary Judgment On Plaintiff's Race Discrimination Claim Under Title VII*

By its Motion, P & G contends that it is entitled to summary judgment on Plaintiff's race discrimination claim under Title VII. Specifically, P & G contends that Plaintiff has failed to proffer sufficient evidence to establish that P & G placed Plaintiff on leave of absence without pay and subsequently terminated Plaintiff because of his race rather than his misconduct. (D.I. 28 at 13). In response, Plaintiff contends that he has presented sufficient evidence to allow the question of P & G's motive and/or intent to be decided by a jury. (D.I. 31 at 24). The Court will examine each of the parties' arguments in turn.

1. *Whether Plaintiff Has Established A Prima Facie Case Of Racial Discrimination*

■ To establish a prima facie case of racial discrimination under Title VII, a plaintiff must establish that: (1) he or she is a member of a protected class; (2) he or she is qualified for the former position; (3) he or she suffered an adverse employment action; and (4) either non-members of the protected class were treated more favorably than the plaintiff, or the circumstances of the plaintiff's termination give rise to an inference of race discrimination. *Goosby v. Johnson & Johnson Med., Inc.,* 228 F.3d 313, 318–19 (3d Cir.2000); *Pivirotto v. Innovative Sys., Inc.,* 191 F.3d 344, 356 (3d Cir.1999). P & G has not challenged Plaintiff's proof regarding the first three elements of the prima facie case, and therefore, the Court will assume without deciding that Plaintiff has established these elements. With regard to the fourth element, however, P & G contends that Plaintiff has not offered sufficient evidence to establish that Plaintiff was placed on leave of absence without pay and subsequently terminated under circumstances giving rise to an inference of discrimination. (D.I. 28 at 13–18). Specifically, P & G contends that Plaintiff has not demonstrated that similarly situated individuals were treated differently than Plaintiff. (D.I. 28 at 13–18).

In response, Plaintiff contends that there is both direct and circumstantial evidence sufficient to establish the fourth element of the prima facie case. Specifically, Plaintiff contends that there is evidence that non-protected employees were treated more favorably than protected employees. (D.I. 31 at 5–6, 27). Additionally, Plaintiff contends that there is generalized evidence which establishes a history of racial discrimination at P & G. (D.I.31, 6–7, 10, 27). Further, Plaintiff contends that a statement made by Henson during the 12/1/98 meeting is direct evidence of racial discrimination. (D.I. 31 at 26). The Court will turn to the evidence offered by Plaintiff to determine if it is sufficient to establish that P & G's initial decision to place

Plaintiff on leave of absence without pay, as well as P & G's subsequent decision to terminate Plaintiff's employment, occurred under circumstances giving rise to an inference of discrimination.

### a. *Plaintiff's evidence relating to comparators*

Plaintiff contends that P & G disciplined him more severely than white employees whose conduct was comparable or worse than that of Plaintiff. In support of his contention, Plaintiff directs the Court to several employees, whom Plaintiff contends were similarly situated to Plaintiff, yet treated more leniently. Specifically, Plaintiff contends that a white male was charged with offensive touching for slapping his wife, who was also an employee of the Dover Wipes Company, and was subsequently incarcerated for violating his parole stemming from this charge. (D.I. 31 at 27). Despite this employee's misconduct, Plaintiff contends that he was granted a leave of absence during the period of his incarceration and was permitted to return to work upon his release. (D.I. 31 at 27). Additionally, Plaintiff contends that a white female employee served ten days in jail for possession of marijuana and driving under the influence, but was permitted to remain employed with P & G. (D.I. 31 at 5–6). Further, Plaintiff contends that a white male was accused of raping his step daughter in 1986, but was not terminated or forced to take a leave of absence until he was convicted of the charges. (D.I. 31 at 6).[5]

In further support of Plaintiff's position that he was disciplined more severely as a result of his race, Plaintiff directs the Court to two prior instances in which he contends white employees were treated more favorably. Specifically, Plaintiff contends that he was suspended from work and placed on probation for excessive absenteeism. (D.I. 31 at 10–11, 27). Plaintiff contends that a white female co-worker had an absenteeism rate as high, or higher than his, but was only disciplined by way of verbal warning. (D.I. 31 at 10–11, 27). Additionally, Plaintiff cites an incident which occurred during work hours in which he got into a disagreement with a co-worker, who was a white female. (D.I. 31 at 6–7, 27). Immediately following this incident, Plaintiff contends that he was sent home without question, while the female was permitted to remain at the facility. (D.I. 31 at 6–7, 27).

When "comparators" are used in a Title VII claim, the acts of non-minority employees must be of "comparable seriousness" if the failure to discharge those employees is being proffered as proof of discriminatory intent. *See McDonnell Douglas v. Green*, 411 U.S. at 804, 93 S.Ct. 1817. Additionally, as this Court has recently held, when employment decisions concerning different employees are made by different supervisors, such decisions are seldom sufficiently comparable to raise an inference of discrimination because different supervisors may exercise their discretion differently. *Maull v. Division of State Police*, 141 F.Supp.2d 463, 483 (D.Del.2001) (*citing Radue v. Kimberly–Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000)).

After reviewing the evidence as it relates to the "comparators" raised by Plaintiff, the Court concludes that the circumstances of each comparator are not sufficiently similar to Plaintiff's circum-

---

**5.** During his deposition, Plaintiff mentioned others, contending that they also were similarly situated to Plaintiff, yet treated more leniently. (D.I. 32, Ex. 1 at 137–147). However, Plaintiff did not pursue any arguments relating to these individuals in his opposition to P & G's Motion, and therefore, the Court assumes that Plaintiff has abandoned these contentions.

stances so as to create an inference that Plaintiff was placed on unpaid leave status and subsequently terminated as a result of racial discrimination. First, with the exception of a white male, Plaintiff has offered no evidence to establish that the comparators were ever charged with a criminal offense. Indeed, Plaintiff offers no tangible evidence regarding the circumstances of these comparators. However, even if the Court accepts Plaintiff's contentions with respect to the charges against these comparators as true, the comparators noted by Plaintiff were either disciplined by different decision-makers or accused of misconduct that is not of comparable seriousness to the misconduct attributed to Plaintiff in this case.

For example, the white male employee who slapped his wife was charged with offensive touching and was subsequently incarcerated for violating his parole stemming from this charge. (D.I.32, Ex. 16, Ex. 33). Although this employee was granted a leave of absence without pay during the period of his incarceration and subsequently reinstated upon his release, in the Court's view his conduct was not comparably serious to the multiple criminal charges against Plaintiff. *See Worthy v. U.S. Steel Corp.*, 616 F.2d 698 (3rd Cir.1980) (holding that the relative seriousness of the misconduct is significant in determining whether persons are similarly situated). Moreover, because the employee's misconduct occurred before P & G purchased the Dover Wipes Company from Kimberly Clarke, the decisions surrounding his employment status were not made by Henson, the decision-maker in this case. *See Maull*, 141 F.Supp.2d at 483 (holding that disciplinary measures undertaken by different supervisors are seldom comparable for purposes of Title VII analysis). Rather, these decisions were made by Chuck Kelso and Joe Holler, who were both management officials for Kimberly Clarke at the time.

Likewise, Plaintiff directs the Court to a white female employee who was incarcerated for driving under the influence and possession of marijuana, but was nonetheless permitted to remain employed at P & G. (D.I. 32, Ex. 1 at 105). Although her misconduct allegedly occurred after P & G purchased the Dover Wipes Company, the Court cannot conclude that her circumstances were sufficiently similar to Plaintiff so as to give rise to an inference of discrimination. In the Court's view, driving under the influence and possession of marijuana are not comparable in their nature and severity to the multiple charges of violent crime that were filed against Plaintiff. *See Worthy*, 616 F.2d 698. Moreover, Plaintiff has presented no evidence that P & G's management officials were ever made aware of the female's charges.

■ Plaintiff also directs the Court to another employee who was charged and incarcerated for raping his step daughter, but was not terminated or forced to take a leave of absence until he was convicted. (D.I. 32, Ex. 1 at 130–147). Although the severity of these charges is similar to those made against Plaintiff, the employee's misconduct allegedly occurred in 1986, which is not only before Henson was employed with P & G, but also before either P & G or Kimberly Clark owned the facility. *See Maull*, 141 F.Supp.2d at 483. Because the disciplinary measures against the white male employee were taken by a different company, the Court cannot conclude that the employee's circumstances were sufficiently similar to give rise to an inference of discrimination. Additionally, Plaintiff has presented no evidence that Scott Paper, the former owner twice removed, was ever made aware of the charges. Indeed, even Plaintiff himself has admitted he has no basis to believe that Scott Paper was made aware of the

situation. (D.I. 32, Ex. 1 at 136). Accordingly, the Court concludes that Plaintiff has not established that similarly situated employees were treated more favorably than Plaintiff, and therefore, the Court concludes that Plaintiff's comparator evidence is insufficient to establish the fourth element of the prima facie case.

As for Plaintiff's additional contentions that non-protected employees were treated more favorable than protected employees, the Court likewise concludes that they are insufficient to establish the fourth element of the prima facie case. Specifically, Plaintiff has presented no evidence that the incidents concerning his absenteeism and his disagreement with the female employee were racially motivated, and thus, the Court concludes that Plaintiff's claims with respect to these incidents are speculative. See Bray v. L.D. Caulk Dentsply Int'l, 2000 WL 1800527, *5 (D.Del.2000) (holding that speculation alone cannot establish a prima facie case of discrimination). Additionally, Henson, the decision-maker in this case, was not employed by P & G at the time these alleged incidents of disparate treatment occurred, and the record is clear that Plaintiff did have a problem with excessive absenteeism and was compensated for the brief leave of absence he was forced to take as a result of his disagreement with the female employee. (D.I. 32, Ex. 1 at 163, Ex. 17, Ex. 29). Accordingly, in these circumstances, the Court concludes that Plaintiff's additional contentions of prior disparate treatment are insufficient to raise an inference of racial discrimination.

### b. Plaintiff's generalized evidence of past racial discrimination at P & G

■ Plaintiff next contends that an inference of discrimination should arise from the substantial generalized evidence of past racial discrimination at P & G. Plaintiff directs the Court to two instances in support of his contention that P & G has a history of racial discrimination. Plaintiff directs the Court to a meeting which occurred on June 14, 1997 between a number of P & G's African–American employees and P & G's representatives Joe Holler, Rick Olin, and Brod Rogers. (D.I. 31 at 7–8, 32). Plaintiff contends that this meeting was held at the request of P & G's African–American employees in order to address their concerns regarding P & G's treatment of African–Americans. (D.I. 31 at 7–8, 32). Additionally, Plaintiff directs the Court to an incident which occurred in 1995 involving a female African–American employee. (D.I. 31 at 31). Plaintiff contends that someone urinated in the female's water bottle, and no investigation or disciplinary action was taken when the female, who was the only African–American in her department, reported this conduct to her supervisor. (D.I. 31 at 31).

After considering this evidence, the Court concludes that it is insufficient to raise an inference of racial discrimination. First, Henson, the decision-maker in this case, was not involved in either the 1995 incident or P & G's meeting with its African–American employees. See Maull, 141 F.Supp.2d at 483. Additionally, there has been no evidence provided that the 1995 incident was racially motivated, and thus, Plaintiff's claim with respect to this incident is speculative. See Bray, 2000 WL 1800527 at *5. Further, both the 1995 incident and P & G's meeting with its African–American employees in 1997 are isolated incidents which are remote in time from Plaintiff's alleged discriminatory treatment, which occurred a year and a half after the 1997 meeting and three years after the 1995 incident. See Dungee v. Northeast Foods, Inc., 940 F.Supp. 682, 688 (D.N.J.1996) (holding that a plaintiff must produce more than an isolated incident in order to withstand summary judgment); see also Guthrie v. Tifco Indus-

*tries,* 941 F.2d 374, 379 (5th Cir.1991) (considering remoteness in time as a factor in determining whether various comments were sufficient to raise an inference of discrimination). Accordingly, the Court concludes that these instances are insufficient to demonstrate that Henson's initial decision to place Plaintiff on leave of absence without pay, as well as her subsequent decision to terminate Plaintiff's employment, occurred under circumstances giving rise to an inference of racial discrimination.

c. *Plaintiff's evidence of the discriminatory statement allegedly made by Henson at the 12/1/98 Meeting*

■ Plaintiff contends that a statement made by Henson at the 12/1/98 Meeting constitutes direct evidence which gives rise to an inference of discrimination. Plaintiff contends that, in response to his criminal charges and unpaid leave of absence status resulting from his alleged incident with the victim, Henson made a derogatory statement to the effect of "that's what you get for dating a white woman." (D.I. 32, Ex. 1 at 66; D.I. 31 at 2). Plaintiff contends that this statement is direct evidence that Henson, an African–American female, harbored racial bias against him because he was an African–American male having a sexual relationship with a white female. (D.I. 31 at 26). Because Henson denies that she made this statement, Plaintiff contends that a genuine issue of material fact is presented with regard to whether Henson placed Plaintiff on leave of absence without pay and subsequently terminated him on the basis of his race. (D.I. 31 at 26).

After reviewing the evidence as it relates to Henson's alleged statement, the Court concludes that Henson's statement is insufficient to establish direct evidence of discrimination. Direct evidence, if believed, proves discrimination without inference or presumption. *Nixon v. Runyon,*

856 F.Supp. 977, 983 (E.D.Pa.1994) (quoting *Brown v. East Miss. Elec. Power Ass'n,* 989 F.2d 858, 861 (5th Cir.1993); *Clark v. Coats & Clark, Inc.,* 990 F.2d 1217, 1223 (11th Cir.1993). Courts have made plain that only the most blatant remarks, whose intent could be nothing other than to discriminate, are considered sufficient to constitute direct evidence of discrimination. *Clark,* 990 F.2d at 1223. Accepting as true Plaintiff's allegation that Henson stated "that's what you get for dating a white woman," the Court is not convinced that this statement is direct evidence of discrimination. Specifically, the Court cannot conclude that the statement reveals nothing other than an intent to discriminate.

When considered as circumstantial evidence, the Court is also not convinced that Henson's statement is sufficient to raise an inference of discrimination. Courts have held that an inference of discrimination is less plausible when the decision-maker is a member of the same protected class as the plaintiff. *See Anderson v. Anheuser–Busch, Inc.,* 65 F.Supp.2d 218, 229 (S.D.N.Y.1999) *aff'd,* 229 F.3d 1135 (2d Cir.2000). Because Henson, like Plaintiff, is an African–American, the likelihood that Henson's statement illustrates her intent to discriminate against Plaintiff on the basis of his race is remote. *Id.* Additionally, Henson's statement was allegedly made roughly six weeks after she decided to place Plaintiff on leave of absence without pay and over a year before she terminated Plaintiff's employment. Further, although Plaintiff filed his EEOC Complaint just ten days after Henson allegedly made this statement, Plaintiff failed to present Henson's statement to the EEOC. In light of these circumstances and the Court's conclusions with respect to the other evidence presented by Plaintiff, the Court concludes that Henson's alleged statement is a stray remark which is insufficient to raise an

inference of racial discrimination. *See Guthrie*, 941 F.2d at 379 (holding that a "stray remark" is insufficient to establish discrimination).

### 2. Whether Plaintiff has offered sufficient evidence for a reasonable fact finder to conclude that P & G's reason for Plaintiff's discharge was pretextual

Even if the Court were to conclude that Plaintiff's evidence was sufficient to establish a prima facie case of racial discrimination, the Court concludes that Plaintiff has not offered sufficient evidence for a reasonable fact finder to conclude that P & G's reasons for the adverse employment action taken against Plaintiff were a pretext for racial discrimination. P & G has articulated legitimate non-discriminatory reasons for the adverse employment action it has taken against Plaintiff. P & G contends that it placed Plaintiff on unpaid leave of absence status after it was informed of and briefly investigated the criminal charges lodged against Plaintiff, including rape, attempted rape, reckless endangerment, unlawful imprisonment, assault, and unlawful sexual contact. (D.I. 49 at 3). P & G contends that it subsequently discharged Plaintiff because of the risk he posed to other P & G employees, the length of his leave of absence status, and his failure to update the company regarding the status of his criminal action. (D.I. 49 at 5; D.I. 49, Ex. 1). Because P & G has articulated legitimate non-discriminatory reasons for the adverse employment action taken against Plaintiff, the presumption of discrimination which arises from Plaintiff's prima facie case disappears. Accordingly, Plaintiff must "cast sufficient doubt upon the employer's proffered reasons to permit a reasonable fact finder to conclude that the reasons are incredible." *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1072 (3d Cir.1996).

A plaintiff can cast sufficient doubt on a defendant's legitimate non-discriminatory reason by showing "weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action [such] that a reasonable fact finder could rationally find them 'unworthy of credence'." *Reeves*, 120 S.Ct. at 2106 (citations omitted). In this case, Plaintiff raises the same evidence in the pretext stage that he raised previously in the prima facie case stage of his argument. Thus, the Court's analysis of Plaintiff's evidence at this stage would be essentially the same as its analysis in the prima facie case stage, except that the Court must consider the more stringent question of whether the evidence is sufficient to establish pretext, rather than whether the evidence is sufficient to establish an inference of discrimination.

Plaintiff contends that his comparator and generalized evidence, as well as Henson's discriminatory statement, are sufficient to show pretext. However, as the Court discussed previously, all of the individuals cited by Plaintiff were either disciplined by different decision-makers or charged with offenses that were not of comparable seriousness to the charges filed against Plaintiff. *See Bluebeard's Castle Hotel v. Government of the Virgin Islands*, 786 F.2d 168, 171 (3rd Cir.1986) (overturning district court's affirmance of department of labor's conclusion that employer's reason for discharge was a pretext for discrimination, because misconduct of comparator was not as severe as plaintiff's misconduct in that comparator did not use obscenities or threaten supervisors); *see also Maull*, 141 F.Supp.2d at 483 (holding that disparity in treatment between comparators and plaintiff is sufficiently accounted for when different decision-makers are involved because supervisors may exercise

their discretion differently). Additionally, the Court has previously concluded that the other alleged discriminatory instances cited by Plaintiff were speculative and thus insufficient to establish either Plaintiff's prima facie case or pretext. *See Bray,* 2000 WL 1800527 at *5. Accordingly, the Court concludes that the evidence offered by Plaintiff in both the prima facie case stage and pretext stage of his argument is insufficient to establish pretext.

■ In addition to his previously offered evidence, Plaintiff also raises evidence with respect to Henson's instructions and P & G's failure to adhere to disciplinary policies, which Plaintiff contends is sufficient to establish that the adverse employment action taken against him was merely a pretext for racial discrimination. (D.I. 31 at 38–39). Specifically, Plaintiff contends that P & G's incorrect application of its disciplinary policy in the fall of 1998 illustrates that P & G's legitimate non-discriminatory reasons were a pretext for discrimination. (D.I. 31 at 38). When an employee is charged with a criminal offense, Plaintiff contends that P & G's disciplinary policy requires that an investigation be conducted to determine if it is likely that the employee committed the crime. (D.I. 31 at 20–22, 38). Plaintiff further contends that the investigation can be done "through interview data (including discussions with the employee, if the employee chooses to discuss the incident) police reports, arrest records, and any other factual information." (D.I. 32, Ex. 9; D.I. 31 at 20–22, 38). Because P & G failed to interview either Plaintiff or the Ranger regarding the charges at issue, Plaintiff contends that there is sufficient evidence to establish pretext. (D.I. 31 at 38).

Additionally, Plaintiff contends that P & G's legitimate non-discriminatory reasons for terminating him are inconsistent in light of Henson's instructions. Specifical-ly, Plaintiff contends that Henson instructed him at the conclusion of the 12/1/98 meeting not to contact P & G further, and that P & G would make a decision with regard to his employment before year's end. (D.I. 31 at 4, 39). Plaintiff contends that this statement illustrates his termination was a pretext for discrimination because the next time he was contacted by P & G was December 1999, when he was informed that he was being terminated solely for his failure to update P & G on the status of his criminal action. (D.I. 31 at 39). At a minimum, Plaintiff contends that a genuine issue of material fact exists with regard to P & G's reasons for his termination, because Henson denies that she instructed Plaintiff not to contact P & G. (D.I. 31 at 39).

After reviewing the evidence raised by Plaintiff, the Court is not convinced that it is sufficient to establish that P & G's legitimate non-discriminatory reasons for the adverse action taken against Plaintiff was a pretext for racial discrimination. With regard to Plaintiff's evidence relating to Henson's instructions, the record is clear that P & G terminated Plaintiff's employment not only for his failure to keep the company informed of his criminal action, but also because of the long duration of Plaintiff's leave of absence and the risk Plaintiff posed to P & G employees. (D.I.29, A–34). Thus, even assuming that Henson did instruct Plaintiff not to contact P & G, Henson's instructions are insufficient to establish pretext because P & G has provided other legitimate reasons for terminating Plaintiff's employment which Henson's instructions do not undermine.

With regard to Plaintiff's evidence that P & G failed to adhere to its disciplinary policies, the Court likewise concludes that this evidence is insufficient to establish pretext. Although P & G did not interview either Plaintiff or the victim regard-

ing the charges at issue, the record is clear that P & G did conduct some amount of investigation consistent with its disciplinary policy. (D.I. 32, Ex. 3 at 27, 85–96). Additionally, as this Court recently held, evidence that a Defendant failed to follow its disciplinary policies is only sufficient to establish pretext when such evidence "comes with a backdrop suggesting racial animus." *Maull,* 141 F.Supp.2d at 483–484 (D.Del.2001) (citing *Rivers–Frison v. Southeast Missouri Comm. Treatment Center,* 133 F.3d 616, 620–21 (8th Cir. 1998)). Based on the evidence and circumstances previously discussed by the Court, the Court cannot conclude that Plaintiff has established a backdrop of racial animus. Because Plaintiff has failed to cast sufficient doubt on P & G's proffered legitimate reasons for the adverse employment action taken, and because Plaintiff has not offered sufficient evidence from which a reasonable fact finder could conclude that P & G intentionally ·discriminated against Plaintiff based on his race, the Court concludes that Plaintiff cannot establish pretext. Accordingly, the Court will grant P & G's Motion For Summary Judgment (D.I.27).[6]

### C. Whether P & G Is Entitled To Summary Judgment On Plaintiff's Retaliation Claim Under Title VII

By its Motion, P & G contends that it is entitled to summary judgment on Plaintiff's retaliation claim under Title VII. (D.I.45). Specifically, P & G contends that Plaintiff has failed to proffer sufficient evidence to establish that the adverse employment action taken by P & G was in retaliation for some protected activity engaged in by Plaintiff under Title VII. (D.I.45, ¶ 17). In response, Plaintiff contends that he has presented sufficient evidence to allow the question of P & G's motive and/or intent to be decided by a jury. (D.I. 48 at 16). Specifically, Plaintiff contends that he was retaliated against for participating in a group meeting, during which racial discrimination complaints were raised, filing charges of discrimination with the DDOL and the EEOC, and engaging in correspondence with P & G, wherein he protested P & G's adverse actions. The Court will examine each of the parties' arguments in turn.

### 1. Whether Plaintiff Has Established A Prima Facie Case Of Retaliation

To establish a prima facie case of retaliation under Title VII, a plaintiff must establish that: (1) he or she engaged in protected activity; (2) defendant took adverse employment action against him or her; and (3) a causal link exists between the adverse employment action taken by defendant and the protected activity engaged in by plaintiff. *Kachmar v. SunGard Data Systems, Inc.,* 109 F.3d 173, 177 (3rd Cir.1997). P & G has not challenged Plaintiff's proof regarding the first two elements of the prima facie case, and therefore, the Court will assume without deciding that Plaintiff has established these elements. With regard to the third element, however, P & G contends that Plaintiff has not offered sufficient evidence to establish that a causal link exists between its adverse employment action and

---

**6.** P & G contends, in the alternative, that it is entitled to judgment as a matter of law because Plaintiff has failed to exhaust his administrative remedies by not amending his charge of discrimination filed with the DDOL and EEOC in December 1998 to include his subsequent termination from P & G. (D.I. 28 at 23). Because the Court has concluded that Plaintiff has failed to present sufficient evidence to raise an inference of racial discrimination, and because the Court has concluded that Plaintiff has also failed to present sufficient evidence to establish that P & G's legitimate non-discriminatory reasons were a pretext for discrimination, the Court will not address P & G alternative contention.

Plaintiff's protected activities. (D.I.45, ¶ 17). Specifically, P & G contends that, due to the lapse of time between Plaintiff's protected activities and the adverse employment action taken, it cannot be inferred that P & G acted with a retaliatory motive. (D.I.45, ¶ 18–20).

In response, Plaintiff contends that there is sufficient evidence to establish a causal connection between P & G's adverse action and Plaintiff's protected activities. (D.I. 48 at 16). Specifically, Plaintiff contends that, prior to P & G's initial decision to place him on leave of absence without pay in October 1998, he engaged in protected activities, including filing a charge of discrimination with the DDOL and EEOC in April 1996 [7] and participating in a group meeting in June 1997, during which racial discrimination concerns were raised. (D.I. 48 at 19). Plaintiff contends that his incident with Ranger in the fall of 1998 provided P & G with its first opportunity to retaliate against Plaintiff for his engagement in these protected activities. (D.I. 48 at 19). Plaintiff additionally contends that he filed a second complaint with the DDOL and EEOC in December 1998 and engaged in correspondence with P & G throughout the fall of 1998, wherein he protested P & G's initial decision to place him on leave of absence without pay. (D.I. 48 at 19). Plaintiff contends that his engagement in these additional protected activities is sufficient to raise an inference that P & G's subsequent decision to terminate his employment in December 1999 was made with a retaliatory intent. (D.I. 48 at 20).

 After reviewing the evidence raised by Plaintiff, the Court is not convinced that it is sufficient to establish a causal link between P & G's adverse action and Plaintiff's protected activity. Plaintiff

relies only upon the "temporal proximity" between P & G's adverse action and his protected activities to establish a causal connection. (D.I. 48 at 16–20). The United States Supreme Court, however, has made clear that, absent extremely close timing between the alleged protected activity and the adverse employment action, a plaintiff cannot rely on mere temporal proximity to establish a claim of retaliation. *Clark County School District v. Breeden,* 532 U.S. 268, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001). In this case, P & G's initial decision to place Plaintiff on leave of absence without pay occurred over two years after Plaintiff filed his first charge of discrimination against P & G's predecessor, Kimberly–Clark, and over one year after Plaintiff's participation in the June 1997 meeting. (D.I.32, Ex. 21, Ex. 22). Additionally, P & G's subsequent decision to terminate Plaintiff's employment occurred over a year after Plaintiff's fall 1998 correspondence and roughly a year after Plaintiff filed his second charge of discrimination. (D.I. 29 at A–9; D.I. 32, Ex. 12, Ex. 13, Ex. 14). Because of the substantial amount of time between Plaintiff's protected activities and P & G's adverse employment actions, and because Plaintiff relies on nothing other than "temporal proximity" to establish a causal connection, the Court concludes that Plaintiff has failed to present sufficient evidence to establish a prima facie case of retaliation. *See Breeden,* 532 U.S. 268, 121 S.Ct. 1508, 149 L.Ed.2d 509 (holding that action taken 20 months later, by itself, suggests no causality); *see also Richmond v. ONEOK, Inc.,* 120 F.3d 205, 209 (10th Cir.1997) (holding three month period insufficient to establish causation); *Hughes v. Derwinski,* 967 F.2d 1168, 1174–75 (7th Cir.1992)

---

7. Plaintiff filed this charge of discrimination as a result of the alleged disparate discipline he received for his excessive absenteeism. This charge was filed against P & G predecessor, Kimberly–Clark, and was subsequently dismissed.

(holding four month period insufficient to establish causation).

2. *Whether Plaintiff has offered sufficient evidence for a reasonable fact finder to conclude that P & G's reason for Plaintiff's discharge was pretextual*

However, even if the Court were to conclude that Plaintiff's evidence was sufficient to establish a prima facie case of retaliation, the Court concludes that Plaintiff has not offered sufficient evidence for a reasonable fact finder to conclude that P & G's reasons for the adverse employment actions taken against Plaintiff were a pretext for retaliation. In response to Plaintiff's claim of retaliation, P & G articulates the same legitimate non-discriminatory reasons for its adverse employment action as it articulated in response to Plaintiff's claim of racial discrimination. Specifically, P & G contends that it placed Plaintiff on unpaid leave of employment status as a result of the investigation it conducted into the multiple violent criminal charges made against Plaintiff in September 1998. (D.I. 49 at 3). Additionally, P & G contends that it subsequently discharged Plaintiff because of the risk he posed to other P & G employees, the length of his leave of absence status, and his failure to update the company regarding the status of his criminal action. (D.I. 49 at 5; D.I. 49, Ex. 1). Thus, Plaintiff must cast sufficient doubt on these reasons in order to establish that they are a pretext for retaliation. *Sheridan*, 100 F.3d at 1072.

In an attempt to establish that P & G's reasons are a pretext for retaliation, Plaintiff offers the exact same evidence he set forth in support of his racial discrimination claim. Accordingly, for the same reasons set forth previously, the Court concludes that Plaintiff ·cannot establish pretext in the context of his retaliation claim. Therefore, the Court will also grant P & G's Motion To Strike, Or In The Alternative, For Summary Judgment On Plaintiff's Claim Of Retaliation (D.I.45).[8]

## CONCLUSION

For the reasons discussed, the Court will grant both P & G's Motion for Summary Judgment (D.I.27) and P & G's Motion To Strike, Or In The Alternative, For Summary Judgment On Plaintiff's Claim Of Retaliation (D.I.45).

An appropriate Order will be entered.

## *ORDER*

At Wilmington this 6th day of February 2002, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1) Defendant's Motion for Summary Judgment (D.I.27) is **GRANTED;**

2) Defendant's Motion To Strike, Or In The Alternative, For Summary Judgment On Plaintiff's Claim Of Retaliation (D.I.45) is **GRANTED.**

---

8. In the alternative, P & G contends that it is entitled to judgment as a matter of law on Plaintiff's retaliation claim because Plaintiff has failed to exhaust his administrative remedies. (D.I.45, ¶ 9–13). Because the Court has concluded that Plaintiff has failed to present sufficient evidence to establish a claim of retaliation, the Court will not address P & G's alternative contention.