

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-9-2002

# Maull v. State Police

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-2294

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Maull v. State Police" (2002). *2002 Decisions*. Paper 381.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/381

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-2294

LIONEL MAULL,

Appellant

v.

DIVISION OF STATE POLICE; DEPARTMENT OF PUBLIC SAFETY;
STATE OF DELAWARE; ALAN D. ELLINGSWORTH, Colonel, Superintendent, Delaware
State Police, in both his official and personal capacities;
GERALD R. PEPPER, Lieutenant Colonel, Deputy Superintendent, Delaware State Police,
in both his official and personal capacities

Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 99-cv-00179)
District Judge: Honorable Joseph J. Farnan, Jr.

Argued February 5, 2002

Before: SLOVITER, and AMBRO, Circuit Judges
POLLAK[*], District Judge

(Opinion filed    July 9, 2002  )

[*] Honorable Louis H. Pollak, Senior United States District Judge for the Eastern
District of Pennsylvania, sitting by designation.

Richard M. Schall, Esquire (Argued)
Patricia A. Barasch, Esquire
Schall & Barash
66 East Main Street
Moorestown, NJ  08057

*Attorney for Appellant*

W. Michael Tupman, Esquire (Argued)
Department of Justice
102 West Water Street
Dover, DE 19901

*Attorney for Appellees*

OPINION OF THE COURT

AMBRO, <u>Circuit</u> <u>Judge</u>

Lionel Maull filed this action alleging that his termination from the Delaware State Police (the "DSP") resulted from racial and disability discrimination.  Maull appeals the District Court's grant of summary judgment in favor of defendants as to his § 1983 and Title VII claims.  <u>Maull v. Division of State Police</u>, 141 F. Supp. 2d 463, 484 (D. Del. 2001).  We affirm.

I.

The DSP hired Maull as a Recruit Trooper in 1986.  Maull, who is African-American, steadily progressed up the chain of command, ultimately reaching the grade of Senior Corporal.  During his career Maull received numerous commendations.  At the same time, however, he accumulated an extensive disciplinary record that included incidents

2

involving, <u>inter</u> <u>alia</u>, driving under the influence, car accidents, drinking while on duty, and possession of a controlled substance and drug paraphernalia.

On the evening of Saturday, October 10, 1998, Maull–who was already on probation for his involvement in a car accident while driving without a license, insurance, or registration–began a drinking binge which continued through October 11th and into the morning of Monday, October 12th. Instead of reporting to work on either the 11th or 12th, Maull called in sick on both days. On Monday afternoon Maull picked up a friend in Maryland and spent the day gambling, later returning home to continue drinking. On Tuesday, October 13th, Maull returned to work. On his way to the station, Maull issued a speeding ticket and gave a student a ride to school. When Maull arrived at the station, Corporal Blades smelled alcohol on Maull's breath and reported this observation to Lieutenant Huttie. Huttie then spoke to Maull, who denied that he had been drinking. After administering a breath test that indicated the presence of alcohol, Huttie received authorization for an intoxilyzer test which ultimately indicated Maull's blood alcohol content as 0.07%. Huttie immediately suspended Maull for the remainder of the day. The DSP later notified Maull that Internal Affairs would investigate the event as a possible violation of the Alcohol and Substance Abuse Policy.

After completion of the investigation, the DSP, on December 4, 1998, charged Maull with:

- one count of violating Rule No. 1, which requires adherence to the DSP Alcohol and Substance Abuse Policy;
- two counts of violating Rule No. 26, which prohibits abuse of sick

3

leave; and

- one count of violating Rule No. 12, which requires an officer to exercise sound judgment in the performance of his duties.

After conducting its hearing, the Divisional Trial Board, on March 9, 1999, found Maull guilty of all charges and recommended the following disciplinary actions for each: Rule No. 1 violation - a twenty-day suspension without pay; Rule No. 26 violations - a twenty-day suspension for each count; and Rule No. 12 violation - dismissal. Subsequently, on March 17, 1999, Superintendent Colonel Ellingsworth–after considering Maull's conduct on October 11-13, 1998, his probationary status, and his prior disciplinary record–recommended Maull's termination. Because only the Secretary of the Delaware Department of Public Health can terminate a State Trooper, an additional administrative hearing was necessary, after which the Secretary agreed with the Superintendent's recommendation and officially terminated Maull on September 9, 1999.

On March 23, 1999, while the Secretary continued to consider the matter, Maull filed this action. In a June 18, 1999 memorandum opinion and order, the District Court dismissed Maull's § 1983 claims against the DSP, the Department of Public Safety, and the State of Delaware, as well as his Rehabilitation Act claims against Colonel Ellingsworth and Lieutenant Colonel Pepper. On May 3, 2001, the District Court granted summary judgment in favor of all defendants on the remaining claims, and Maull filed a timely notice of appeal on May 18, 2001. On appeal, Maull concedes that he "is not appealing the district court's grant of summary judgment to defendants on plaintiff's disability discrimination claims under the Americans with Disabilities Act and the Rehabilitation Act of 1973."

4

Instead, he limits his appeal "to the district court's grant of summary judgment [as to] plaintiff's Title VII and section 1983 claims of race discrimination." We have appellate jurisdiction under 28 U.S.C. § 1291 and exercise plenary review over the District Court's grant of summary judgment. Albright v. Virtue, 273 F.3d 564, 570 (3d Cir. 2001).

## II.

Summary judgment is appropriate if there are no genuine issues of material fact and defendants are entitled to judgment as a matter of law. Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). We view all facts and draw all reasonable inferences in Maull's favor. Id. However, Maull may not rely on the allegations in his pleadings; instead, through "more than a scintilla" of evidence he must present "specific facts showing that there is a genuine issue for trial." Id.; see Fed. R. Civ. P. 56.

We reject Maull's contention that the District Court improperly viewed the facts of the case in the light most favorable to defendants. In support, he points to the District Court's opinion, in which the "Factual Background" section primarily discusses Maull's disciplinary record while dedicating only one sentence to "the substantial evidence in the record showing plaintiff to have been in many ways a model trooper."

This argument is unpersuasive. First, Maull's awards and alleged status as a "model trooper" are irrelevant to the District Court's determination. In weighing the allegations of Maull's racial discrimination claims, the only pertinent facts are those relevant to defendants' termination decision. Simpson v. Kay Jewelers, 142 F.3d 639, 647 (3d Cir. 1998) (stating that, in a discrimination case, "the focus is on the particular criteria or

5

qualifications identified by the employer as the reason for the adverse action").  Here, those facts are strictly limited to Maull's behavior on October 10-13, 1998, his probationary status, and his disciplinary record.  All other facts, particularly Maull's awards and commendations, are irrelevant to the analysis.  Id. ("[t]he employee's positive performance in another category is not relevant").

Second, Maull's argument distorts the appropriate factual deference that the District Court owes to Maull as the non-moving party.  The District Court need only view all *disputed* facts in Maull's favor.  Abramson v. William Paterson College, 260 F.3d 265, 267 (3d Cir. 2001) ("*Where there is a dispute*, we view the facts in the light most favorable to the plaintiff.") (emphasis added).  It has no responsibility to ignore facts that are undisputed, material, and part of the record.  Here, neither party contests any facts at issue, e.g., Maull's disciplinary record, the disciplinary records of fellow troopers, or the procedural history of this case.  Accordingly, the District Court did not err in stating, and applying, the correct summary judgment standard.

### III.

In analyzing Maull's Title VII and § 1983 claims, we apply the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  See St. Mary's Honor Society v. Hicks, 509 U.S. 502, 506 n.1 (1983) (assuming that the McDonnell Douglas framework applies to both Title VII and § 1983 discrimination claims); McKenna v. Pacific Rail Service, 32 F.3d 820, 825 n.3 (3d Cir. 1994) (same).  First, Maull

6

must establish a *prima facie* case of discrimination. Once he carries this initial burden, defendants must provide "a legitimate, nondiscriminatory reason" for Maull's termination. Contrary to Maull's assertion, the District Court properly accepted defendants' justification without evaluating its credibility. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142 (2000) ("This burden is one of production, not persuasion; it can involve no credibility assessment."); Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) ("The employer need not prove that the tendered reason actually motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff."). Once defendants offer that justification, Maull must provide evidence showing that there is a genuine dispute of material fact as to whether "the legitimate reasons offered by the defendant[s] were not [their] true reasons, but were a pretext for discrimination." Reeves, 530 U.S. at 143 (citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

We need only address Maull's failure at the third and final pretext stage which, contrary to his contention, the District Court analyzed independently from the *prima facie* stage. Maull, 141 F. Supp. 2d at 482 ("However, *even if* the Court were to conclude that Plaintiff's evidence was sufficient to create an inference of discrimination for purposes of establishing a prima facie case of racial discrimination, the Court concludes that Plaintiff has not offered sufficient evidence for a reasonable factfinder to conclude that Defendants' reasons for Plaintiff's discharge were a pretext for racial discrimination.") (emphasis added).

7

To show pretext, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes, 32 F.3d at 764. Defendants contend that they terminated Maull "because of his disciplinary record in total, including his prior offenses, as well as his misconduct during October 11 through 13 while Plaintiff was on probation," Maull, 141 F. Supp. 2d at 482, and Maull fails to provide any evidence challenging the credibility of this justification.

Instead, Maull attempts to provide evidence showing that his race "was more likely than not a motivating or determinative cause" for his termination. First, he contends that defendants disciplined him more severely than white State Troopers who committed comparable offenses. While such comparative evidence may show pretext, it is only relevant if the comparators are "similarly situated" to Maull. Fuentes, 32 F.3d at 765. Contrary to Maull's assertion, the District Court did not "usurp the role of the jury" by evaluating, at the summary judgment stage, whether the offered comparators are indeed "similarly situated." Simpson, 142 F.3d at 645 (performing just such an analysis at the summary judgment stage). Further, we agree with the District Court that Maull "has not shown that these individuals were similarly situated to Plaintiff as far as the nature of the offenses against them and their prior disciplinary records." Maull, 141 F. Supp. 2d at 483. As the District Court recognized, none of the white Troopers had nearly as extensive disciplinary records as Maull. In addition, no others were on probation at the time of their

8

respective infractions. While Maull attempts to make comparisons on an incident-to-incident basis, the record reflects that the DSP terminated him based not only on the events of October 10-13, 1998, but also on his probationary status and his disciplinary record. No reasonable jury could conclude, based on this comparison evidence, that defendants' offered reason was pretextual.

Second, Maull points to alleged policy violations as evidence of pretext. Viewing the facts in Maull's favor, we assume that those violations did occur. However, "the mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent or that the substantive reasons given by the employer for its employment decision were pretextual." Randle v. City of Aurora, 69 F.3d 441, 454 (10th Cir. 1995). Here, Maull relies on violations that are unrelated to defendants' justification for their termination decision. See Stern v. Trustees of Columbia Univ., 131 F.3d 305, 313 (2d Cir. 1997) ("departures from procedural regularity can raise a question as to the good faith of the process *where the departure may reasonably affect the decision*") (emphasis added). We agree with the District Court that simply pointing to violations is inadequate without "evidence that white State Troopers were treated differently by Defendants with respect to these policies." Maull, 141 F. Supp. 2d at 482; see English v. Colorado Department of Corrections, 248 F.3d 1002, 1009 (10th Cir. 2001) (noting that while "evidence that the defendant acted contrary to an unwritten policy or contrary to company practice" may show pretext, a plaintiff relying on such a violation must "provid[e] evidence that he was treated differently

9

from other similarly-situated employees who violated work rules of comparable seriousness").  As already noted, here there was no well-founded comparative evidence.

## IV.

Based on the evidence presented, no reasonable factfinder could conclude that defendants intentionally discriminated against Maull based on his race.  Thus we affirm the District Court's order granting summary judgment in favor of defendants.

_____

TO THE CLERK:

    Please file the foregoing Opinion.


                              By the Court,


                              /s/Thomas L. Ambro
                              _____
                              Circuit Judge

11